### McNALLY v. FIELD.

(Circuit Court, D. Rhode Island. December 20, 1902.)

#### No. 2,662.

1. INTERNAL REVENUE—ADMINISTRATOR'S BOND—LIABILITY TO TAX—CONSTRUCTION OF STATUTE.

Act March 2, 1901 (31 Stat. 945 [U. S. Comp. St. 1901, p. 2304]), being an amendment of Act June 13, 1898 (30 Stat. 460 [U. S. Comp. St. 1901, p. 2284]), for the purpose, as shown in its title, of reducing taxation, provided: "Seven. Bond: For indemnifying any person or persons, firm or corporation who shall have become bound or engaged as surety for the payment of any sum of money, or for the due execution or performance of the duties of any office or position and to account for money received by virtue thereof, fifty cents." The original act had added to this pro-

vision, "all other bonds of any description except such as may be required in legal proceedings, not otherwise provided for in this schedule." *Held* that, in view of its purpose to reduce taxation, the amending act would be construed as referring only to bonds given to indemnify sureties, and would not cover the original bond of an administrator, which, by ruling of the commissioner of internal revenue, would have been exempted under the original act as a bond required in a legal proceeding.

**2. SAME—DOUBTFUL CONSTITUTIONAL POWER.**

The constitutional power of congress to impose a tax on an administrator's bond running to a state court having probate jurisdiction being questionable, that construction of the statute will be adopted which will relieve it from the imputation of an exercise of a doubtful power.

**3. STATUTE IMPOSING TAX—AMBIGUITY—CONSTRUCTION IN FAVOR OF TAXPAYER.**

Where a statute imposing a tax is susceptible of two constructions, and the legislative intent is in doubt, the doubt should, as a rule, be resolved in favor of the taxpayer.

Wm. M. P. Bowen, for petitioner.

Chas. A. Wilson, U. S. Dist. Atty.

COLT, Circuit Judge. The question presented on this petition for a writ of mandamus is whether administrators' bonds are within the following paragraph of the act of March 2, 1901 (31 Stat. 945 [U. S. Comp. St. 1901, p. 2304]):

"Seven. Bond: For indemnifying any person or persons, firm, or corporation who shall have become bound or engaged as surety for the payment of any sum of money, or for the due execution or performance of the duties of any office or position, and to account for money received by virtue thereof, fifty cents."

The contention of the petitioner is that this paragraph is limited to bonds for indemnifying a surety upon bonds for the payment of any sum of money, or upon bonds for the due execution and performance of the duties of any office or position, and, consequently, that it does not cover original bonds such as are given by administrators. On the other hand, the contention of the government is that the first part of the paragraph covers bonds for indemnifying a surety, and that the latter part has reference to original bonds given for the due execution and performance of the duties of any office or position, and therefore includes administrators' bonds.

The arguments of counsel on one side and on the other fail to make the meaning of this paragraph plain. It is manifestly ambiguous upon its face, and may be interpreted either way.

We have presented, then, for our determination the proper interpretation of a statute capable of two constructions, and the question is whether the court should adopt the construction of the petitioner or the construction of the government. In my opinion, the construction asked for by the government is open to such serious objections that it should not be followed.

This paragraph appeared originally in the act of June 13, 1898 (30 Stat. 460 [U. S. Comp. St. 1901, p. 2304]), in the following form:

"Bond: For indemnifying any person or persons, firm, or corporation who shall have become bound or engaged as surety for the payment of any sum of money, or for the due execution or performance of the duties of any office or position, and to account for money received by virtue thereof, and all other bonds of any description, except such as may be required in legal proceedings, not otherwise provided for in this schedule, fifty cents."

Under the above paragraph, the commissioner of internal revenue ruled that the bonds of "receivers, assignees, executors, administrators, and guardians," "for the faithful performance of the duties of their office or positions," were exempt, since they were bonds "required in legal proceedings," and so within the exception mentioned.

As the paragraph now stands under the act of March 2, 1901, the words, "and all other bonds of any description, except such as may be required in legal proceedings," have been eliminated. The commissioner has ruled, and the government now contends, that the repeal of the exception in the above clause operates to make the bonds of receivers, assignees, executors, administrators, and guardians taxable under this paragraph. It does not seem to me that such was the intention of congress.

The original act of June 13, 1898 [U. S. Comp. St. 1901, p. 2284], was the Spanish war revenue act. Its purpose was "to provide ways and means to meet war expenditures." The act of March 2, 1901, was amendatory to this act, and its purpose, as the title shows, was to "reduce taxation" under the original act. In the accomplishment of this purpose parts of the original act were repealed, including that portion of the paragraph to which we have referred. The position of the government involves the conclusion that, in an amendatory act to reduce taxation, by which the omnibus clause of the former act covering "all other bonds of any description," together with an exception, was repealed, congress intended by this repeal to impose a tax on the very class of bonds which were expressly excluded by the original act. It is manifest that congress did not intend to enlarge the scope of the original act. In that act congress evidently desired to tax all classes of bonds, but, on grounds of public policy or because such taxation might prove unconstitutional, it excluded bonds "required in legal proceedings." Under such circumstances it is not reasonable to conclude that it was the purpose of congress, in an act to reduce taxation, to change the policy which it has followed since the adoption of the war revenue act of 1862 (12 Stat. 481), and to declare its purpose to tax this class of bonds. Certainly a conclusion of this character should not be reached in the absence of a clear and unmistakable intention on the part of congress. Such a conclusion should rest on a stronger foundation than an interpretation of an ambiguous statute which leads to such a result.

But the position of the government is open to other objections. It is familiar law that congress has no power to tax the governmental instrumentalities of a state. It is the acknowledged right of a state to administer justice through its own courts, and to employ all necessary agencies for that purpose, unobstructed by the federal government. These subjects are therefore not within the taxing power of congress. It is at least questionable whether this prohibition does not extend to bonds required in legal proceedings, such as the bonds of administrators, executors, receivers, assignees, and guardians. These bonds would seem to form a necessary part of the machinery through which the state exercises its judicial power.

Courts of probate are a part of the judicial system of the different states. The municipal court of the city of Providence has probate

jurisdiction. The bond of an administrator runs to the probate court. These bonds are an indispensable part of the judicial system of the state in the exercise of its probate jurisdiction. An administrator may be considered an officer of the probate court. He is at all times subject to its orders and decrees. The power to tax an administrator's bond involves the power to obstruct the state in the exercise of one of its most important judicial functions. It is not necessary, however, to pass upon the constitutional power of congress to levy this tax. It is sufficient, for the purposes of this case, that such a power is questionable or the fair subject of doubt. The present controversy turns on the construction of an ambiguous statute, and the court will never so interpret a statute as to involve the exercise of a doubtful constitutional power, if it is open to any other reasonable interpretation. It may also be observed that a tax should not be imposed unless such purpose clearly appears. When a statute is susceptible of two constructions, and the intention of the legislature is in doubt, such doubt, as a rule, should be resolved in favor of the taxpayer.

It is true that the decision of the commissioner of internal revenue or of any department of the government, in construing a statute, is entitled to due consideration and much respect; but, giving the rulings of the commissioner such weight as they are entitled to upon the facts as they appear, they cannot be permitted to govern where the proposed construction of the statute is open to the serious objections arising in the case at bar.

Demurrer overruled, and petition granted.