338 A.2d 536.

NEWPORT GAS LIGHT COMPANY *vs.* JOHN H. NORBERG, *Tax Administrator.*

June 2, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. On August 22, 1973, the Newport Gas Light Company petitioned the defendant Tax Administrator under G. L. 1956 (1969 Reenactment) §42-35-8 for a declaratory ruling on whether or not the public service corporation gross earnings tax prescribed in G. L. 1956 (1970 Reenactment) §§44-13-1 and 44-13-4(E)[1] applied to the proceeds received by it from the condemnation of

---

[1]General Laws 1956 (1970 Reenactment) §44-13-1 provides in part:

"Every corporation enumerated in §44-13-4, all hereinafter referred to under the term 'utility,' incorporated under the laws of this state shall annually pay a tax or excise to the state for the privilege of existing as such during any part of the preceding calendar year. Such tax * * * shall be measured by its *gross earnings,* determined as hereinafter provided * * *." (Emphasis added.)

General Laws 1956 (1970 Reenactment) §44-13-4(E) provides:

"In the case of every corporation the principal business of which is manufacturing, selling and distributing to the public illuminating or heating gas, three per cent (3%) of its *gross earnings.*" (Emphasis added.)

certain of its real property by the Newport Redevelopment Agency. The administrator ruled against the taxpayer because in his judgment condemnation proceeds were taxable as "gross earnings" within the contemplation of the statute. The taxpayer thereupon sought judicial review in the Superior Court under the Administrative Procedures Act, and when the court sustained its position, the administrator petitioned this court for a writ of certiorari. Because the question was one of first impression in this state, we ordered the writ to issue. *Newport Gas Light Co.* v. *Norberg*, 113 R. I. 925, 320 A.2d 619 (1974).

The taxpayer is a public utility corporation that supplies gas for commercial and household use on the island of Aquidneck in the county of Newport. On April 14, 1971, the Newport Redevelopment Agency acquired by eminent domain certain commercial real estate which the taxpayer owned and used as an office and service facility. For that taking the taxpayer received a total of $67,500, none of which it reported on its gross earnings tax return. Upon audit that omission was noticed, and a tax of 3 percent of the condemnation award was then assessed against the taxpayer. The assessment was paid under protest, and these judicial proceedings followed.

The sole question is whether the term "gross earnings" as used in §§44-13-1 and 44-13-4(E) includes a condemnation award. That term is nowhere specifically defined in the taxing statute, and the parties disagree on its meaning. Consistently with his declaratory ruling, the administrator argues that the gross earnings tax is in the nature of a franchise tax imposed on public utilities for the privilege of existing and that accordingly the Legislature used the term "gross earnings" as a synonym for "gross receipts" and must have contemplated that all receipts from any source or activity, irrespective of whether related to

the utility's "principal business," would be considered taxable.

The taxpayer's contention is that the term "gross earnings" should be regarded more reasonably as meaning only "gross income," that is, revenue received in ordinary day-to-day business operations "from the sale of its products * * * or the rendition of services," and that therefore funds generated by an involuntary conversion of a capital asset should not be treated as taxable earnings.

Neither of those arguments convinces us that the pivotal term has a clear, plain, ordinary meaning, or discloses an unmistakable legislative intention. Instead, our own independent reading of the statute as a whole satisfies us that the term as used in §§44-13-1 and 44-13-4(E) is lacking in precision and is fairly susceptible of two or more conflicting constructions. In short, the Legislature's failure to define the term more precisely creates an ambiguity. In these circumstances we must seek the intended meaning of the legislation by reference to all pertinent considerations. *East Shore Land Co.* v. *Peckham,* 33 R. I. 541, 548-49, 82 A. 487, 491 (1912); *Blais* v. *Franklin,* 31 R. I. 95, 105-06, 77 A. 172, 177 (1910). Among those are the constructional aids which say that property is not to be taxed unless clearly the subject of a taxing statute, that doubts as to the scope and meaning of a tax law are to be resolved in favor of the taxpayer, and that taxing legislation will not be extended by implication or conjecture to cover subjects not expressly included within their plain meaning. *United Transit Co.* v. *Hawksley,* 86 R. I. 53, 61, 133 A.2d 132, 136 (1957); *Manning* v. *Board of Tax Comm'rs,* 46 R. I. 400, 410, 127 A. 865, 870 (1925); *Mc-Nally* v. *Field,* 119 F. 445, 448 (D.R.I. 1902); *Swartz* v. *Berg,* 147 Mont. 178, 182, 411 P.2d 736, 738 (1966); *Dorrance's Estate,* 333 Pa. 162, 171, 3 A.2d 682, 686 (1939).

When we apply these rules we are constrained to conclude that the undefined term "gross earnings," as here contested, cannot be construed to include condemnation proceeds.

The petition for a writ of certiorari is denied and dismissed, the writ previously issued is quashed, and the records certified are ordered remitted to the Superior Court with our decision endorsed thereon.

*Moore, Virgadamo, Boyle & Lynch, Salvatore L. Virgadamo,* for plaintiff-respondent.

*Richard J. Israel,* Attorney General, *W. Slater Allen, Jr.,* Asst. Attorney General, *Perry Shatkin,* Chief Legal Officer, Taxation, for defendant-petitioner.