INN GROUP ASSOCIATES et al.

v.

Allan BOOTH et al.

No. 90–235–APPEAL.

Supreme Court of Rhode Island.

June 18, 1991.

**50** 

Joseph DeAngelis, Lori Caron Silveira, Licht & Semonoff, Richard G. Winkler, Providence, for plaintiffs.

C. Russell Gengtson, Carroll, Kelly & Murphy, Providence, for defendants.

## OPINION

KELLEHER, Justice.

This controversy comes before us on an appeal from a Superior Court judgment that voided tax assessments made by the city of Newport on a fifty-eight-room resort for the fiscal years 1983 through 1987.

The defendants in the original action and the appellants before us now are Allan Booth, Jr., in his capacity as tax assessor (assessor) of the city of Newport, and Joseph Crawshaw, in his capacity as collection supervisor of the city of Newport. Hereafter we shall refer to the appellants as Newport.

The plaintiffs in the original suit and the appellees before us here are the Inn Group Associates (Inn Group) and the Inn on the Harbor Inn Owners' Association (Association). The Inn Group is a limited partnership that operates both an individual room-rental business and a time-share business at the Inn on the Harbor (Inn). The Inn consists of fifty-eight rooms on the Newport waterfront and a restaurant named Astor's. The Association is an unincorporated association that represents the interests of the Inn's time-share owners.

1. These facts are taken from the trial justice's

The narrative begins in 1981 when Inn Group purchased a parcel of real estate in Newport.[1] Shortly thereafter Inn Group commissioned the Landing Development Company (Landing Development) to construct a building on the parcel. After the building was completed and named Inn on the Harbor, Landing Development transformed the Inn into two condominiums. The first condominium consisted of the fifty-eight rooms and became the legal entity "L–1." The second condominium consisted of the restaurant and legally became "LC–1."

The Landing Development then devised the Interval Ownership Plan (Plan) for the fifty-eight rooms in the Inn and recorded a document entitled "Declaration of Covenants and Restrictions of Interval Ownership" (Declaration) in the Newport Registry of Deeds.

The Plan transformed the fifty-eight rooms into time-share units. A purchaser of a time-share unit would be entitled to stay for one week in one of the Inn's fifty-eight rooms. As there are fifty-two weeks in a year and fifty-eight rooms, the Plan created 3,016 units of interval ownership.

According to the Plan, each purchaser of an interval ownership unit would receive:

"a) An undivided and fractional fee simple interest in all fifty-eight (58) rooms, together with a proportionate percentage interest in the common areas of the condominium development as tenants in common with all other buyers.

"b) The exclusive right to occupy and use a particular room during a particular week of the year for the usable life of the property (fixed estate) or any available unit during different weeks of the year for the usable life of the property (flexible estate) subject to certain restrictions.

"c) A membership in *Resort Condominiums International*, which entitles the buyer to exchange an interval at the Inn for an interval at any one of over one thousand resort hotels around the world and other non-real property rights, bene-

decision.

fits, and services available through the time-share structure and operation."

After recording the Declaration, the Landing Development conveyed ownership of the Inn to the Inn Group. The Inn became operational in 1982. By 1984 more than two-thirds of the 3,016 units had been sold, with the remaining weeks available for day-to-day rental purposes to the public as a hotel.

In 1982 Newport hired the firm of Systems Technology Associates (STA) to revalue all Newport real estate for assessment purposes. At that time STA appraised all condominiums in Newport, using the "market data" or "comparable sales" method.[2] When the assessor requested STA to utilize a replacement-cost analysis in its assessment of the Inn, STA valued the Inn minus the restaurant at $3,400,000 using the "replacement cost" method.[3] The assessor, however, personally appraised the Inn rather than rely on the STA assessment because of the Inn's "unique qualities," as it was the only time-share building in Newport at that time. When Newport assessed taxes upon property owners in the city for the fiscal year 1983, the Inn minus the restaurant, or the fifty-eight rooms, was assessed for $8,087,040.

The assessor's method of assessment of the Inn minus the restaurant (that is, the 3,016 units) was as follows: first, the assessor estimated the purchase price of each interval unit; second, the assessor deducted percentages for marketing costs and for the non-real-property components of the intervals; third, the assessor estimated the value of the unsold intervals; finally, the assessor arrived at the value of the entire building by totaling all the intervals, sold and unsold. The Inn Group appealed to the Newport Board of Tax Appeals and also filed a complaint in Superior Court, alleging that the assessment was illegal.

Newport assessed the Inn's fifty-eight rooms for the fiscal year 1984 at $9,726,650. For the fiscal year 1985 the valuation of the Inn minus the restaurant was $12,099,200. The fifty-eight rooms were valued at $12,087,800 for the fiscal years 1986 and 1987. The assessor's method of assessing the fifty-eight rooms for the years 1984, 1985, 1986, and 1987 was similar to the method he employed in 1983. As a result of these valuations, the Inn Group filed appeals with the Newport Board of Tax Appeals and lawsuits against Newport in Superior Court.

The Inn Group and the Association came before the Superior Court trial justice, alleging that the assessments on the Inn's fifty-eight rooms were unfair and illegal and constituted a violation of G.L.1956 (1988 Reenactment) chapter 5 of title 44. After a lengthy trial, the trial justice determined that the taxes levied on the Inn's fifty-eight rooms were void for two reasons —one, because the assessments were "not evaluated pursuant to state law" and, two, because the assessments were not made "using the identifiable and accepted methods of appraisal." Newport subsequently filed an appeal to this court.

■ We endorse the actions taken by the trial justice because the methods employed by the assessor did not follow the mandate of state law. This reason is dispositive of this controversy because tax assessments that are made outside the ambit of state law are illegal, regardless of whether identifiable and accepted methods of appraisal are used. Consequently the only issue we shall address is whether the trial justice committed error in voiding the assessments

2. "The market data [or comparable sales] approach estimates the value of a property by comparing it with similar properties recently sold in the open market. Each comparable sale is analyzed, in relation to the subject property, under the general categories of time, terms of sale, location, and physical characteristics. The sale price of each comparable property is then adjusted to reflect any dissimilarities between it and the subject property." Conroy and DiChiara, *Timeshare Property Assessment and Taxation,* ch. 2 at 4 (1983).

3. "The [replacement] cost approach estimates market value by computing the current cost of replacing a property, and subtracting any depreciation resulting from one or more of the following factors: physical deterioration, functional obsolescence, and economic obsolescence." Conroy and DiChiara, ch. 2 at 4.

made upon the Inn's fifty-eight rooms because the valuations were not made "pursuant to state law."

■ As a preliminary matter, however, we turn to the Constitution of Rhode Island, which provides that "[t]he general assembly shall, from time to time, provide for making new valuations of property, for the assessment of taxes, in such manner as it may deem best." R.I. Const. art. 6, sec. 12. We have interpreted this constitutional provision to mean that the power to tax is vested exclusively in the Legislature. *Ewing v. Tax Assessors of Jamestown,* 104 R.I. 630, 634, 247 A.2d 850, 853 (1968). That is, the Legislature decides what will be taxed, and the property may not be taxed unless the Legislature has passed a statute clearly subjecting it to taxation. *Newport Gas Light Co. v. Norberg,* 114 R.I. 696, 699, 338 A.2d 536, 538 (1975).

Given this background, the critical issue in this litigation is whether the assessor levied property taxes on the Inn's fifty-eight rooms in a manner that was inconsistent with state law. The assessments that are challenged are for the fiscal years 1983 through 1987. For the years 1983 and 1984, the Rhode Island Condominium Act (Condominium Act)[4] was applicable. In 1984, however, the General Assembly enacted the Rhode Island Real Estate Time-Share Act (Time-Share Act).[5] This legislation governs the assessments made for the years 1985, 1986, and 1987. The issue before us, therefore, can be resolved by answering the following inquiries: (1) did the assessor levy taxes on the fifty-eight rooms in a manner that was inconsistent with the Condominium Act for the fiscal years 1983 and 1984? and (2) did the assessor levy taxes in a manner that was not authorized by the Time-Share Act for the fiscal years 1985, 1986, and 1987?

■ In turning to the Condominium Act, we note that G.L.1956 (1984 Reenactment) § 34–36.1–1.05 provides:

"*Separate titles and taxation.*—(a) If there is any unit owner other than a

declarant, each unit that has been created, together with its interest in the common elements, constitutes for all purposes a separate parcel of real estate.

"(b) If there is any unit owner other than a declarant, each unit must be separately taxed and assessed, and no separate tax or assessment may be rendered against any common elements for which a declarant has reserved no development rights.

"(c) Any portion of the common elements for which the declarant has reserved any development rights must be separately taxed and assessed against the declarant, and the declarant alone is liable for payment of those taxes.

"(d) If there is no unit owner other than a declarant, the real estate comprising the condominium may be taxed and assessed in any manner provided by law."

Consequently § 34–36.1–1.05 provides for the separate assessment of condominium units. The Condominium Act defines "unit" as a physical portion of the condominium designated for separate ownership or occupancy. The Commissioners' Comment, which anticipated the question of assessment of time-shares, notes that " 'unit,' describes a tangible, physical part of the project, rather than a right in, or claim to, a tangible physical part of the property. Therefore, for example, a 'timeshare' arrangement in which a unit is sold to 12 different persons each of whom has a right to occupy the unit for one month does not create 12 new units—there are rather, 12 owners of the unit." Section 34–36.1–1.03, Commissioners' Comment, paragraph 15 at 562.

■ Upon examining the method employed by the assessor, we find it evident that his approach was illegal under the Condominium Act. The assessor estimated the purchase price of each interval unit and then deducted percentages for non-real-property components of each interval. Ul-

---

4. *General Laws 1956 (1984 Reenactment)* chapter 36.1 of title 34.

5. *General Laws 1956 (1984 Reenactment)* chapter 41 of title 34, as enacted by P.L.1984, ch. 141, § 2.

timately the assessor arrived at the value of the condominium by adding all the interval units. The Condominium Act, however, requires the assessments to be made on each unit, as a physical portion of the project. In sum, the division of a condominium into time-shares has no effect on the condominium for tax purposes under the Condominium Act. We therefore believe that the trial justice did not err in voiding the assessments made on the Inn's fifty-eight rooms for the fiscal years 1983 and 1984.

■ We move now to the second question: are the assessments void under the Time–Share Act? Answering this inquiry proves a far more difficult task than answering the first inquiry, in spite of the fact that the Legislature has spoken specifically on the subject of taxation of a time-share.

Section 34–41–1.03(b) of the Time–Share Act reads as follows:

"Each time-share estate constitutes for all purposes a separate estate in real property. Assessments can only be made on the real property value of the development. Notices of assessment and bills for taxes must be furnished to the managing entity, if any, or otherwise to each time-share owner, but the managing entity is not liable for the taxes as a result thereof."

At this juncture we must assume the burden of determining what the Legislature intended when it drafted the first two sentences of § 34–41–1.03(b).

The first sentence states, "Each time-share estate constitutes for all purposes a separate estate in real property." The words "for all purposes" means, if we give these words their ordinary meaning, "always" or "under all conditions." As one "purpose" or "condition" would be the purpose of taxation, the first sentence, standing alone, must mean that each time-share

estate may be separately taxed as it is a separate estate in real property.

The second sentence of § 34–41–1.03(b) provides, "Assessments can only be made on the real property value of the development." This sentence completely contradicts the first sentence. That is, the second sentence requires taxes to be assessed not on each time-share estate but by the "development." Adding to the confusion is the fact that the word "development" is not defined anywhere in the Time–Share Act.

The situation before us is analogous to one in which a person finds he has two rules to follow, the first of which states "Look before you leap" and the second of which admonishes "He who hesitates is lost." These two rules cannot be translated into action together without conflict. There is no way to know whether one must look or must not hesitate. Consequently we are lost.

Justice Reed, in *United States v. American Trucking Associations, Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345, 1350–51 (1940), has noted:

"There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning had led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act."

Because the two sentences create an ambiguity, we need to seek the intended purpose of the legislation by considering all relevant sources. *See Newport Gas Light Co.*, 114 R.I. at 699, 338 A.2d at 538.

As there is no legislative history regarding the Time–Share Act, we must turn our attention elsewhere for assistance.[6] Fortu-

---

6. Newport urges us to follow the lead of the Florida Supreme Court, which allowed an appraiser to value a time-share development by estimating the value of each individual time-share week. *See Oyster Pointe Resort Condominium Associates, Inc. v. Nolte*, 524 So.2d 415, 417 (Fla.1988). Significant, however, is the fact

that the Florida statute provides that "[t]he assessed value of each time-share development shall be the value of the combined individual time-share periods or time-share estates." Fla. Stat. Ann. § 192.037(2) (West 1989). As the Rhode Island statute is markedly different, we

nately we are able to consider three relevant sources. First, there is the Uniform Law Commissioners' Model Real Estate Time–Share Act (Uniform TimeShare Act), with its comments. Second, we are also able to examine the Massachusetts Real Estate Time–Share Act (Massachusetts Time–Share Act). Third, we shall refer to relevant rules of statutory construction.

The Uniform Time–Share Act § 1–103(b), 7B U.L.A. 360 (West 1985) provides the following:

"Each time-share estate constitutes for all purposes a separate estate in real property. Each timeshare estate [other than a time-share estate for years] must [not] be separately assessed and taxed. [Notices of assessments and bills for taxes must be furnished to the managing entity, if any, or otherwise to each time-share owner, but the managing entity is not liable for the taxes as a result thereof.]" (Brackets in original.)

For an explanation of this exemplar we must turn to the following comment:

"Subsection (b) makes each time-share other than a time-share license a separate estate or interest for all purposes other than assessment and taxation. Whether or not time-share estates are also separate estates for purposes of assessment and taxation, and whether or not a distinction is made in this regard between fee simple time-share estates and time-share estates for years, depends on what choices a State makes with respect to the bracketed language in the second sentence of subsection (b). Whatever decision a State makes with respect to the first bracketed phrase in that sentence, if it is decided to remove the brackets from around the word 'not' (thereby leaving that word in that sentence), the last sentence of subsection (b) should be left in (with the brackets around it deleted)." *Id.* at comment 4.

From the comments, then, it is clear that the General Assembly elected to tax time-share estates not as individual units but as one collective development. The Legislature chose to eliminate the brackets from

refuse to travel the trail blazed by the Florida

around the word "not," thereby leaving that word in the sentence. So, the obvious intent of the Legislature was that time-share estates "must *not* be separately assessed and taxed." The fact that the last sentence of § 1–103(b) of the Uniform Time–Share Act was adopted by the Legislature also confirms this interpretation because the last sentence would otherwise be superfluous.

The second relevant source that merits our consideration is the Massachusetts Time–Share Act, chapter 183B. In particular Mass. Gen. Laws Ann. ch. 183B, § 3(b) (West 1977), which is very similar to its Rhode Island counterpart, reads:

"Each time-share estate constitutes for all purposes a separate estate in real property; provided, however, that a time-share property shall be considered one parcel of real estate for the assessment and collection of real estate taxes * * * due to a city, town or district with respect to the time-share property. Notices of assessments and bills for taxes shall be furnished to and paid by the managing entity, if any, as agent for the time-share owners, or if there is no managing entity, to each time-share owner."

Thus the first clause of the Massachusetts statute is identical to the first sentence of the Rhode Island statute. However, whereas the Rhode Island statute ends with a period, the Massachusetts statute contains a semicolon followed by the words "provided, however." Thus the Massachusetts statute clearly creates an exception to the first clause, "[e]ach time-share estate constitutes for all purposes a separate estate in real property." *Id.* The exception is that for the assessment and collection of property taxes, a time-share property shall be considered one parcel of real estate.

Another reason the Massachusetts statute assists us in our task is that whereas the Rhode Island statute does not define "development," the Massachusetts statute does define "time-share property." Time-share property is "one or more time-share

Supreme Court.

units subject to the same time-share instrument, together with any other real estate or rights therein appurtenant to those units." *Id.* at § 2. The Massachusetts Legislature intended that all time-share units covered under the same deed should be assessed as one parcel of real estate. As Massachusetts has also adopted the third sentence of the Uniform Time–Share Act, it is clear that the Massachusetts Legislature's intent, like the Rhode Island Legislature's, was to assess taxes on the time-share property collectively and not to tax each time-share estate separately.

A final guide we can use to resolve the situation wherein there is a conflict between two sentences of a statute comes in the form of the statutory principles of construction. One such rule is that "taxing statutes are to be strictly construed against the taxing authority." *Van Alen v. Stein,* 119 R.I. 347, 359, 376 A.2d 1383, 1389 (1977). From this aid to construction springs forth another principle that " '[d]oubts as to the construction of [taxing] laws of this character are to be resolved in favor of the taxpayer.' " *Potowomut Golf Club, Inc. v. Norberg,* 114 R.I. 589, 592, 337 A.2d 226, 227 (1975). We shall therefore construe the Time–Share Act strictly against Newport, the taxing entity.

The Uniform Time–Share Act, the Massachusetts statute, and the rules of statutory construction all converge on one reading of the statute, namely, that the assessments can only be made on the entire time-share development as a whole unit. When we apply this interpretation to the method that was employed by the assessor, we find that that method cannot be countenanced. To recapitulate, the assessor first added up the selling price of each interval unit. Then the assessor deducted a percentage for all non-real-property values of the interval units. To arrive at a figure for the entire fifty-eight rooms, the tax assessor then assessed the intervals that had not yet been sold. It is by adding these two figures, both the sold and the unsold intervals, that the assessor arrived at a value for the Inn's fifty-eight rooms. Assessments were *not* made on the development.

We therefore believe that the trial justice did not commit error in voiding the assessments for the years 1985, 1986, and 1987 as a violation of the Time–Share Act.

The assessments made on the Inn's fifty-eight rooms are illegal under both the Condominium Act and the Time–Share Act. We believe that the trial justice's decision was not clearly wrong, nor did the trial justice misconceive or overlook material evidence. *See CIC—Newport Associates v. Stein,* 121 R.I. 844, 403 A.2d 658 (1979).

Accordingly the Superior Court judgment is affirmed, and the appeal is denied and dismissed.