Robinson, J.,
dissenting.
After a great deal of research and reflection and even soul-searching, I have concluded that I must dissent from the Court’s thoughtful and well-written opinion. I do so respectfully, but quite ardently. The majority opinion is unquestionably the product of a conscientious attempt to apply this Court’s precedent to the instant factual situation; however, I simply disagree with the legal conclusions reached by the majority. It is my view that: (1) the $100,000 statutory tort cap (G.L. 1956 § 9-31-2) should apply; and (2) the award of prejudgment interest was inappropriate in the instant case.[1]
I
The Statutory Tort Cap
Because the Court’s opinion nicely describes Rhode Island’s rejection of common law sovereign immunity and the legislative enactment of the Rhode Island Tort Claims Act (chapter 31 of title 9), it is not necessary for me to replow that ground. It is § 9-31-2 of that act,[2] the section which confines potential damages against a governmental defendant, that is the narrow focus of my dissent: I disagree with the majority that § 9-31-2 is inapplicable to this case.[3]
I begin by emphasizing that our precedents in this domain surely do not constitute a seamless rule of law — far from it! Indeed, as I shall seek to demonstrate, there are actually two quite different “lines” of cases from this Court with respect to the statutory tort cap issue. The majority has chosen to base its holding on one of those lines of cases, but I am firmly convinced that the instant case should be *1059 governed by the other line of cases.[4]
Preliminarily, I note that the issue at hand is one of statutory interpretation, and we review such issues in a de novo manner. Shine v. Moreau, 119 A.3d 1, 9 (R.I. 2015); Nunes v. Meadowbrook Development Co., 24 A.3d 539, 542 (R.I. 2011). I further note the principle that the plain meaning rule should control when we are confronted with clear statutory language. See State v. Oliveira, 882 A.2d 1097, 1110 (R.I. 2005) (“It is well settled that when the language of a statute is clear and unambiguous, [we] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.”) (internal quotation marks omitted); see also Hough v. McKiernan, 108 A.3d 1030, 1035 (R.I. 2015). But I also bear in mind that we are required to resort to interpretive principles when we are confronted with statutory ambiguity. See Oliveira, 882 A.2d at 1110 (“[I]t is equally well established that, when confronted with statutory provisions that are unclear or ambiguous, this Court, as final arbiter of questions of statutory construction, will examine statutes in their entirety, and will glean the intent and purpose of the Legislature from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement of the provisions to be construed.”) (internal quotation marks omitted); see also State v. Briggs, 934 A.2d 811, 814 (R.I. 2007) (“[W]hen ambiguity renders construction of a statute necessary, it is incumbent upon us to determine and effectuate the Legislature’s intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes.”) (internal quotation marks omitted); Blais v. Franklin, 31 R.I. 95, 105-06, 77 A. 172, 177 (1910); see generally In re Brown, 903 A.2d 147, 150 (R.I. 2006) (“When we determine the true import of statutory language, it is entirely proper for us to look to the sense and meaning fairly deducible from the context.”) (internal quotation marks omitted).
It is my view that § 9-31-2 is a model of clarity until one encounters the clause that begins with the word “provided” (which clause contains the exception from the statutory tort cap for “all instances in which the state was engaged in a proprietary function in the commission of the tort”). In other words, § 9-31-2 presents the reader with a provision that is starkly clear (the legislative desire that there be a cap on tort damage awards against government), which provision is immediately followed by another provision (the “proprietary function” exception) that is undefined and not reducible to a precise definition. As our two lines of cases reflect, the “proprietary function” term is one which “is fairly susceptible of two or more conflicting constructions.” Newport Gas Light Co. v. Norberg, 114 R.I. 696, 699, 338 A.2d 536, 538 (1975). This is a situation where “the Legislature’s failure to define the term more precisely creates an ambiguity. In these circumstances we must seek the intended meaning of the legislation by reference to all pertinent considerations.” Id.
Throughout my weeks of mulling over this admittedly very difficult case, I have kept constantly in mind the General Assembly’s unwavering insistence that there should be a specific monetary ceiling on *1060 damages awarded pursuant to successful tort actions against the state. In expressly-acknowledging the General Assembly’s clear public policy option in that regard, this Court has stated:
“When the government acts in the same manner as a private individual, ‘the only difference between the State of Rhode Island and other tort defendants is the [monetary] limitation on liability contained in § 9-31-2.’ * * * This cap on damages * * * ensure[s] that the state is not crippled by excessive judgments.” Catone v. Medberry, 555 A.2d 328, 334 (R.I. 1989) (quoting Laird v. Chrysler Corp., 469 A.2d 425, 429 (R.I. 1983)).
It is self-evident that the raison d’étre of the statutory tort cap is to “protect[ ] the state’s treasury against excessive claims.” Barratt v. Burlingham, 492 A.2d 1219, 1225 (R.I. 1985) (Kelleher, J., concurring). I respectfully submit that that legislative concern about not saddling taxpayers with great fiscal burdens continues to be of enormous importance and should be constantly borne in mind in addressing the difficult legal issues that this case involves,[5]
The majority correctly notes that § 9-31-2 excepts from the reach of the statutory cap “all instances in which the state was engaged in a proprietary function in the commission of the tort * * The majority then focuses on certain opinions issued by this Court over the years which have sought to delineate what the General Assembly meant when it employed in that statute the undefined term “a proprietary function.” Those decisions relied upon by the majority vary in their analytical clarity, but they generally tend to equate a proprietary function with one that can be performed by a non-governmental actor as readily as by a governmental actor. See, e.g., Housing Authority of the City of Providence v. Oropeza, 713 A.2d 1262, 1264 (R.I. 1998) (“[T]he function at issue here, namely, the providing of security within and by the housing authority is proprietary in nature.”); Rhode Island Student Loan Authority v. NELS, Inc., 550 A.2d 624, 627 (R.I. 1988) (“NELS’s essential function[s] * * * to collect the principal and interest on outstanding student loans and to maintain records on all transactions * * * are proprietary in nature.”); Lepore v. Rhode Island Public Transit Authority, 524 A.2d 574, 575 (R.I.1987) (“[W]e do not believe that maintaining a public-transportation authority is a function that is so intertwined with • governing that we will consider it a governmental function. Rather, we consider its operation proprietary in nature.”).[6] Those cases focus on the partic *1061 ular activity being performed when the alleged tort was committed. In my judgment, such a focus is not rooted in the statutory language and constitutes an “Open Sesame” for enormous damage awards — whereas I am convinced that the legislative intent as expressed in the statute was to limit the amount of damage awards in the governmental tort context save only for the genuinely exceptional case where government engages in a “proprietary function.”
By contrast, as I indicated at the outset, there is another line of cases that should not be overlooked. These cases focus not on the nature of the activity at issue but rather on whether, or not the alleged tort was somehow related to the maintenance of a public building. See, e.g., Kuhl v. Perri, 706 A.2d 1328, 1329 (R.I. 1998) (mem.) (“[Ojperation and * * * maintenance of a public school is a governmental function and not a proprietary one.”); Matarese v. Dunham, 689 A.2d 1057, 1058 (R.I. 1997) (“Maintenance of government buildings is plainly a governmental function * * *.”); Chakuroff v. Boyle, 667 A.2d 1256, 1258 (R.I. 1995) (“[T]he operation and the maintenance of a public school is a governmental function and not a proprietary one.”); Custom Flight Systems of New England, Inc. v. State, 641 A.2d 1324, 1324 (R.I. 1994) (mem.) (“[R]unning a public airport is exclusively an activity performed by a public entity.”); Saunders v. State, 446 A.2d 748, 751-52 (R.I. 1982) (“[The] maintenance of a correctional institution is a governmental function. Consequently, in the event that a correctional officer employed by the state was guilty of negligence and was not protected by personal immunity, the state would be liable under the doctrine of respondeat superior for the negligence of its employee subject to the monetary limitation set forth in § 9-31-2.”). As I understand them, the just-cited cases indicate that the statutory tort cap (and not the proprietary function exception) should be applicable when the alleged tort is directly related to the maintenance of a public building. Accordingly, in view of the fact that the tort at issue unquestionably occurred in connection with the maintenance of a governmental building, I believe that these cases should control the instant case.[7]
I viéw this Court’s opinion in the case of Matarese, 689 A.2d at 1057-58, to be particularly instructive and directly pertinent to the instant case. In Matarese, the Court was confronted with the following issue: whether a plaintiff who had been injured by a city-owned car driven by an employee of the City of Providence was entitled to prejudgment interest on the award of damages against the city (liability, having been conceded). Id. There would be such an entitlement if driving the vehicle were held to be a proprietary function, However, the Court in Matarese held that, since the driver “was on twenty-four-hour call” with respect to the maintenance and operation of government buildings, he was performing a governmental function — and, therefore, the addition of prejudgment interest to the judgment against the city was barred. Id. at 1058. The Court in that opinion explicitly stated that the “Maintenance of government buildings-is plainly a governmental function * * [8] Id. (em *1062 phasis added). The breadth of that statement is noteworthy in that it is not in any way limited to the prejudgment interest context. Id In the case at bar, the fact is that Ms. Roach was injured as a result of activities (allegedly conducted in a negligent manner) that related directly to the maintenance of the Veterans Home (incontestably a government building). Try as I might, I am unable to fathom why her situation is distinguishable from that of the plaintiff involved in Matarese or from that of the plaintiffs in the other cases that I have cited in the immediately preceding paragraph — all of which classify the maintenance of public buildings as a governmental function; for that reason, I do not believe that plaintiffs case should be exempted from the statutory tort cap.[9] I realize that, if plaintiff had been injured while working in a private nursing home or in a hotel, the amount of damages awarded to her would have been far less susceptible to legitimate challenge. But that is not what in fact happened in this case. I am firmly of the view that the Matarese line of cases clearly should control.[10] The General Assembly remains free to increase the dollar amount in the statutory tort cap or, indeed, to abolish that cap entirely and allow tort claims against government to be treated just like such claims against private persons or entities. But, absent such legislative action, I am convinced that the statutory tort cap should apply to this case.
II
Prejudgment Interest
I am also of the opinion that the Superi- or Court erred in adding prejudgment interest to the award of damages. I would not deviate from the rationale of this Court’s holding in Matarese, 689 A.2d at 1058. See Andrade v. State, 448 A.2d 1293, 1295 (R.I. 1982) (holding that prejudgment “interest is not an element of damages”); see also Andrade v. Perry, 863 A.2d 1272, 1275 (R.I. 2004); Mulvaney v. Napolitano, 671 A.2d 312, 313 (R.I. 1995) (mem.).
III
Conclusion
I do acknowledge that there is precedent upon which the majority could logically rely for its conclusion that the statutory tort cap should not apply in this case. But I am equally aware that there is also a line of eases applying the statutory tort cap to activities connected to the maintenance of public buildings. (One yearns for Occam’s metaphorical razor to cut through this clash of authoritative precedents.) In view *1063 of the fact that the Veterans Home is incontestably a government building and that the tort at issue resulted from the allegedly negligent maintenance of that building as well as the General Assembly’s clear desire that damages in tort actions against government should ordinarily be limited to a maximum of $100,000,1 would hold that the statutory tort cap should apply to the instant case.
It is my opinion that the obvious goal of the General Assembly in enacting the Tort Claims Act was to allow some measure of relief to plaintiffs seeking relief for alleged governmental torts while also protecting taxpayers from having to be responsible for very large awards of damages. With that in mind, I respectfully but earnestly submit that the scope of the “proprietary function” exception to the statutory tort cap cries out for definitive clarification by the General Assembly — lest the ever-beleaguered taxpayer be required to be responsible for very large awards of damages (such as those in the instant case) against a background of uncertainty as to the meaning of the “proprietary function” exclusion in the underlying statute.
For these several reasons, I respectfully dissent.

. In writing this dissent, I have kept constantly in mind the following hauntingly perceptive observation of Judge Learned Hand at the conclusion of an opinion concerning the meaning of a particular federal statute:
"When we ask what Congress 'intended,’ usually there can be no answer, if what we mean is what any person or group of persons actually had in mind. Flinch as we may, what we do, and must do, is to project ourselves, as best we can, into the position of those who uttered the words, and to impute to them how they would have dealt with the concrete occasion. He who supposes that he can be certain of the result is the least fitted for the attempt.” United States v. Klinger, 199 F.2d 645, 648 (2d Cir. 1952).

. Although the majority opinion does provide the reader with the text of G.L, 1956 § 9-31-2, I nonetheless proceed to do the same in this footnote so that that statutoiy provision will be readily accessible for the reader grappling with die difficulties presented by this very complex and challenging case. That statute reads as follows:
"In any tort action against the state of Rhode Island or any political subdivision thereof, any damages recovered therein shall not exceed the sum of one hundred thousand dollars ($100,000); provided, however, that in all instances in which the state was engaged in a proprietary function in the commission of the tort, or in any situation whereby the state has agreed to indemnify the federal government or any agency thereof for any tort liability, the limitation on damages set forth in this section shall not apply.” Section 9-31-2.

. In order to avoid any confusion, I note that “[t]he limitation on liability was $50,000 when * * * § 9-31-2 was first enacted by P.L. 1970, ch. 181, § 2, but it was increased to $100,000 by P.L. 1984, ch. 87, § 1." Graff v. Motta, 695 A.2d 486, 489 n.1 (R.I. 1997).

. In view of the dilemma posed by.the very inconsistent nature of our precedent with respect to the statutory tort cap, one inevitably recalls the following lines from one of Robert Frost’s most quoted poems:
"Two roads diverged in a wood, and I—
I took the one less traveled by,
And that has made all the difference.”
Robert Frost, “The Road Not Taken,” in A Little Treasury of Modern Poetry 137 (Oscar Williams ed., Charles Scribner's Sons 1952).

. See also Andrade v. State, 448 A.2d 1293 (R.I. 1982). Although the specific issue before the Court in Andrade was the availability vel non of prejudgment interest, the Court opted to speak more broadly about the Tort Claims Act, saying that said act "must be strictly construed and whatever right of recovery is to be ascertained against the state must be expressly mentioned * * *." Id. at 1294. I view that statement as reflective of a continuing judicial awareness that the Tort Claims Act is to be carefully cabined in accordance with the first clause of § 9-31-2. Subsequently, the Court quoted with approval that same language from Andrade in the case of Matarese v. Dunham, 689 A.2d 1057, 1058 (R.I. 1997).

. The opinion in Lepore v. Rhode Island Public Transit Authority, 524 A.2d 574 (R.I. 1987) in effect defines "proprietary function” as being "one which is not 'so intertwined with governing that the government is obligated to perform it only by its own agents or employees.’ " Id. at 575 (quoting Xavier v. Cianci, 479 A.2d 1179, 1182 (R.I. 1984)). Notably, however, the quoted language from the Xavier case was articulated in the context of deciding “whether the mayor and the board can contract out the functions and duties of a city department that was created by the city charter and staffed and paid for in accordance with a duly enacted city ordinance.” Xavier, 479 A.2d at 1181. The opinion in Xavier in no *1061 way dealt with the "proprietary function” exclusion in the statutory tort cap.

. I would add that, in my judgment, the General Assembly's clearly expressed preference for finite monetary limitations in the domain of governmental tort liability calls for the application of the statutory tort cap in doubtful cases — although I do not believe that this case is in any way doubtful.

. It is important to note that, just like the plaintiff in the instant case, the plaintiff in Matarese “attempted to bring her case within *1062 the ambit of Lepore [524 A.2d at 575],” asserting that the "operation of a motor vehicle” was a “proprietary function” because that activity "might just as easily be performed by a private person as by an agent of the municipality.” Matarese, 689 A.2d at 1058. However, the Court in Matarese disagreed with that argument based on the fact that the city employee "was engaged in a governmental function [ (viz,, the maintenance of government buildings) ] * * * when the accident occurred.” Id.

. I concede that not all cases under the Tort Claims Act will be controlled by the rationale of the Matarese line of cases, which focuses on the maintenance of government buildings. However, I am convinced that that line of cases should control the case at bar; and, for me, that is sufficient for this day. See Grady v. Narragansett Electric Co., 962 A.2d 34, 41-42 n.4 (R.I. 2009) (referencing "our usual policy of not opining with respect to issues about which we need not opine”).

. This Court is free to overrule the Matarese line of cases if it concludes that the reasoning in those cases is faulty. But unless and until that happens, it is my view that those cases should govern the analysis and the result in cases involving the maintenance of public buildings.