IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CHRISTINA HEDGER, as Administratrix     :
of the Estate of Betty Jo Wilhoite,     : C.A. No. K14C-05-012 WLW
CHRISTINA HEDGER, AMANDA                 :
WALKER, RICHARD JEWEL, JOHN              :
WALKER and MATTHEW WALKER,               :
individually,                            :
                                         :
            Plaintiffs,                  :
                                         :
      v.                                 :
                                         :
MEDLINE INDUSTRIES, INC. and             :
ALLMED MEDICAL PRODUCTS CO.,             :
LTD.,                                    :
                                         :
            Defendants.                  :

Submitted: October 14, 2016
Decided: January 27, 2017

**ORDER**

Upon Defendant Allmed Medical Products Co., Ltd.'s
Motion to Dismiss for Lack of Personal Jurisdiction.
*Denied Without Prejudice.*

Gregory A. Morris, Esquire of Liguori & Morris, Dover, Delaware; attorney for Plaintiffs.

Robert K. Beste, III, Esquire of Smith Katzenstein & Jenkins LLP, Wilmington, Delaware; attorney for Defendant Allmed Medical Products Co., Ltd.

WITHAM, R.J.

Before the Court are motions[1] to dismiss filed by Defendant Allmed Medical Products Co., Ltd. ("Allmed"). The motions are opposed by the Plaintiffs. The codefendant, Medline Industries, Inc., has not filed a response. This is the Court's decision on the motions.

The motions raise two legal questions:

(1) Have the Plaintiffs established personal jurisdiction over Allmed? and

(2) If the Plaintiffs have not done so, should the Court allow the Plaintiffs jurisdictional discovery anyway?

The Court answers the first question in the negative and the second question in the affirmative. While the Plaintiffs have failed to establish personal jurisdiction over Allmed in their complaints, they are entitled to limited discovery to help them establish a basis for jurisdiction. The Court does not address Allmed's claims of insufficiency of process and of service of process because they appear to have been abandoned in its briefs.

Allmed's motions to dismiss the complaints against it for lack of personal jurisdiction are **DENIED WITHOUT PREJUDICE**. The Plaintiffs' request for limited jurisdictional discovery is **GRANTED**.

## FACTS AND PROCEDURAL HISTORY

The Court looks primarily to the complaints in resolving these motions.[2]

---

[1] This decision refers to "motions" and "complaints" in the plural because Allmed's brief addressed motions to dismiss filed in two consolidated actions: this one and No. K14C-12-035.

[2] This is based on the standard of review, discussed *infra*, and the Plaintiffs' election not to supplement the allegations in their complaint with a clear theory of jurisdiction.

2

The complaints allege that Allmed is a Chinese corporation doing business within the State of Delaware. Allmed and its co-defendant, Medline Industries Inc. ("Medline"), manufactured, sold, and distributed tracheostomy care kits.

One of those kits was eventually sold and distributed to a resident of Delaware. That resident was Betty Jo Wilhoite, the Plaintiffs' decedent. Ms. Wilhoite's husband, Brian Wilhoite, was using one of Allmed's tracheostomy care kits to clean Ms. Wilhoite's tracheostomy when the cotton swab applicator came apart. Ms. Wilhoite suffocated and died as a result of the product's failure. The Court infers that the entire incident took place in the Wilhoites' home in Dover, Delaware.

The complaints' allegations pursue theories of negligence, breach of express warranty, and breach of implied warranty. They give no hint of where the products were sold or purchased.

Allmed filed motions to dismiss in both actions. In its motions, Allmed introduces new facts based on a declaration by Ruby Qiu, Assistant to the General Manager and Legal Supervisor in the Sales Department of Allmed. Some of the new facts contradict those set out in the complaints.

The declaration explains that Allmed is a Hong Kong corporation with its principal place of business in China. Allmed has no significant ties to the State of Delaware. Allmed and Medline have a manufacturer/distributor relationship: Medline is an independent distributor, and Allmed exercises no control or direction over it. Instead, Allmed sells the tracheostomy care kits it manufactures to Medline

in China, and title passes in that country.[3]  Medline then arranges shipment from China primarily to Lathrop, California, and also to other U.S. locations, not including Delaware.

This is the Court's ruling on Allmed's motions to dismiss.

## THE PARTIES' CONTENTIONS

Allmed contends that no section of Delaware's long-arm statute confers jurisdiction over Allmed and that "dual jurisdiction" is not viable in this case.  If the Plaintiffs are allowed to engage in jurisdictional discovery, Allmed argues, that discovery should be strictly limited.

The Plaintiffs respond that the allegations in the complaint are sufficient to suggest general, specific, and dual jurisdiction over Allmed.  The Plaintiffs request "full jurisdictional discovery" "to explore and potentially confirm or refute the extensive facts set forth" in Ms. Qiu's declaration.

## STANDARD OF REVIEW

As a general matter, when a defendant files a motion to dismiss for lack of personal jurisdiction under Superior Court Civil Rule 12(b)(2), it is the plaintiff's burden to demonstrate that there is a basis for the court to exercise jurisdiction over a nonresident defendant.[4]  When a motion is decided without the benefit of an evidentiary hearing or jurisdictional discovery, however, the plaintiff has a lower

---

[3] Title passes in China, the declaration contends, by virtue of the products being sold free on board from three cities in China. *See generally* 6 *Del. C.* §2-319.

[4] *Brewer v. Peak Performance Nutrients Inc.*, No. K12C-04-008, 2012 WL 3861169, at *1 (Del. Super. Aug. 16, 2012).

4

burden.[5] Even though the plaintiff may rely on the allegations in the complaint to show a prima facie case for jurisdiction, "a plaintiff does not have the burden to plead in its complaint facts establishing the court's personal jurisdiction over [the] defendant."[6] For that very reason, "[i]f the facts alleged in the complaint are insufficient to establish personal jurisdiction over the defendants, then the trial court may allow the plaintiff to complete discovery in order to establish jurisdiction over defendant as long as plaintiff's claim of personal jurisdiction is not frivolous."[7] "Discovery is not appropriate so plaintiffs 'can fish for a possible basis for the court's jurisdiction. Before ordering personal jurisdiction discovery there must be at least "some indication that this particular defendant is amenable to suit in this forum.""[8]

## DISCUSSION

### I. The Law of Personal Jurisdiction

"Personal jurisdiction refers to the court's power over the parties in the dispute."[9] The court engages in a two-step analysis to determine whether it has

---

[5] *Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*, No. 6546-VCL, 2013 WL 6184066, at *1 (Del. Ch. Nov. 21, 2013) (quoting *Sprint Nextel Corp. v. iPCS, Inc.*, No. 3746-VCP, 2008 WL 2737409, at *5 (Del. Ch. July 14, 2008)).

[6] *Benerofe v. Cha*, No. 14614, 1996 WL 535405, at *3 (Del. Ch. Sept. 12, 1996) (citing *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 538 (1991)).

[7] *Benerofe*, 1996 WL 535405, at *3 (citing *Hart*, 593 A.2d at 541).

[8] *In re Arctic Ease, LLC*, No. 8932-VCMR, 2016 WL 7174668, at *5 n.50 (Del. Ch. Dec. 9, 2016) (quoting *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 831 n.195 (Del. Ch. 2009)).

[9] *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 129 (Del. 2016) (citing *RuhrgasAG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)).

personal jurisdiction over a nonresident defendant.[10] "First, the court ... determine[s] whether Delaware's long[-]arm statute, 10 *Del. C.* § 3104(c), is applicable."[11] Second, if the statute is applicable, the court determines whether the exercise of jurisdiction would violate due process.[12]

Personal jurisdiction can spring from two bases. The first basis, general jurisdiction, allows a court "to 'assert [ ] jurisdiction over a nonresident defendant on the basis of wholly unrelated contacts with the forum.'"[13] Constitutionally, a court may exercise general jurisdiction over a corporation where the "corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."[14] Paradigmatically, a corporation is "essentially at home" in its place of incorporation and its principal place of business.[15]

The second basis, specific jurisdiction, exists when "the 'suit aris[es] out of or relate[s] to the [corporation's] contacts with the forum.'"[16]

Delaware's long-arm statute provides as follows:

---

[10] *Matthew v. Fläkt Woods Group SA*, 56 A.3d 1023, 1027 (Del. 2012).

[11] *Id.*

[12] *Id.*

[13] *Genuine Parts*, 137 A.3d at 129 (alteration in original) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 426 (1984) (Brennan, J., dissenting)).

[14] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

[15] *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citing Brilmayer et al., *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 735 (1988)).

[16] *Genuine Parts*, 137 A.3d at 130 (quoting *Helicopteros*, 466 U.S. at 414 n.8).

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .[17]

The sections of Delaware's long-arm statute can be grouped according to whether they are grants of specific or general jurisdiction.[18] "Sections 3104(c)(1), (c)(2), and (c)(3) have been deemed to be specific jurisdiction provisions."[19] "Section 3104(c)(4) . . . has been deemed a general jurisdiction provision."[20]

In 1986, the Delaware Supreme Court remarked in a footnote that

It is conceivable that a tort claim could enjoy a dual jurisdictional

---

[17] 10 *Del. C.* § 3104(c).

[18] *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998).

[19] *Id.* (citing *Otokumpu Eng'g Enters., Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724 (Del. Super. 1996); *Colonial Mortg. Serv. Co. v. Aerenson*, 603 F. Supp. 323, 327 (D. Del 1985); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991)).

[20] *Id.* (citing *Outokumpu*, 685 A.2d at 727–28; *Mayhall v. Nempco, Inc.*, No. 91C-10-018, 1994 WL 465545 (Del. Super. July 29, 1994); *Chaplake Holdings, Ltd. v. Chrysler Corp.*, No. 94C-04-164, 1995 WL 653510 (Del. Super. Aug. 11, 1995)).

basis under (c)(1) and (c)(4) if the indicia of activity set forth under (c)(4) were sufficiently extensive to reach the transactional level of (c)(1) and there was a nexus between the tort claim and transaction of business or performance of work.[21]

Two decisions of the Superior Court established an interpretation of *LaNuova*'s footnote that permitted the exercise of personal jurisdiction where no one subsection of § 3104(c) is satisfied: *Boone v. Oy Partek Ab*[22] and *Wright v. American Home Products Corp.*[23] In both cases, the Court adopted a "stream-of-commerce" or "dual jurisdiction" reading of (c)(1) and (c)(4) of the statute, holding that personal jurisdiction exists where the plaintiff shows that "(1) 'there is an intent or purpose on the part of the [defendant] to serve the Delaware market,' and (2) that 'intent or purpose . . . results in the introduction of the product to [Delaware] and plaintiff's cause of action arises from injuries caused by that product.'"[24]

## II. The Plaintiffs Have Not Established A Constitutional Basis for Personal Jurisdiction

The Plaintiffs argue that their complaints "clearly provide[ ] enough alleged facts [to] establish[ ] Defendant has sufficient contacts to justify specific, general and

---

[21] *LaNuova D & B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 n.3 (1986).

[22] 724 A.2d 1150.

[23] 78 A.2d 518 (Del. Super. 2000), *appeal denied sub nom. Les Laboratoires Servier v. Wright*, 755 A.2d 389 (Table), 2000 WL 975089 (Del. June 5, 2000).

[24] *Polar Electro Oy. v. Suunto Oy*, 829 F.3d 1343, 1352–53 (Fed. Cir. 2016) (alteration in original) (quoting *Boone*, 724 A.2d at 1158); *Wright*, 768 A.2d at 529–30; *see also Crane v. Home Depot, Inc.*, No. 06C-03-034, 2008 WL 2231472, at *4 (Del. Super. May 30, 2008).

'dual jurisdiction' or 'stream-of-commerce' jurisdiction." But there is no non-frivolous argument for the constitutional exercise of general or specific jurisdiction. At best, the Plaintiffs have suggested that there may be facts that give rise to jurisdiction under the stream-of-commerce or dual jurisdiction theory.

### A. Statutory Bases for Jurisdiction

Turning first to jurisdiction under the long-arm statute, the Plaintiffs have pleaded a factual basis for general jurisdiction and for "dual jurisdiction." No such basis exists for the exercise of specific jurisdiction, however.

### 1. General Jurisdiction is Facially Available

To establish general jurisdiction under § 3104(c)(4), the plaintiff must allege facts to show that the nonresident defendant "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the state." The complaints allege that Allmed "do[es] business within the State of Delaware." While not addressing whether Allmed "regularly" does business within the State, this allegation is facially sufficient to provide a statutory basis for general jurisdiction. Whether it passes constitutional muster under the due process clause is a separate matter, discussed below.

### 2. Sufficient Facts Exist to Suggest Dual Jurisdiction

The Plaintiff's complaints, standing alone, do not allege any facts that would demonstrate the appropriateness of dual jurisdiction here. But Allmed's submissions accompanying its motions to dismiss have provided grounds to suggest (without

actually establishing) that dual jurisdiction may exist under the statute.

As restated by the U.S. Court of Appeals for the Federal Circuit, Delaware's dual jurisdiction theory requires a showing that "(1) 'there is an intent or purpose on the part of the [defendant] to serve the Delaware market,' and (2) that 'intent or purpose . . . results in the introduction of the product to [Delaware] and plaintiff's cause of action arises from injuries caused by that product.'"[25]

The Plaintiffs have not pleaded facts in their complaints to suggest that dual jurisdiction is appropriate. At best, Plaintiffs have alleged that Allmed manufactured, sold, or distributed a product and the product somehow ended up in the hands of a Delaware resident. That is not enough to establish dual jurisdiction.

But the unsworn declaration and manufacturing agreement provided *by Allmed* suggest the factual predicate to dual jurisdiction may be present. According to Allmed's submissions, Allmed is a Hong Kong corporation with its principal place of business in China. It manufactures all of its products within China. It has never done business in Delaware. It sold the type of product in question here, which it dubbed "sterile procedural trays," to its codefendant, Medline, free on board from Wuhan, Shenzen, and Shanghai, China, according to the terms of a manufacturing agreement with Medline. Allmed did not manufacture these trays for any distributors besides Medline while the manufacturing agreement was in force. Medline allegedly arranged shipment to Lathrop, California and some other U.S. locations (Delaware not included). Allmed, of course, does not concede that these facts show any intent

---

[25] *Id.* at 1352–53 (quoting *Boone*, 724 A.2d at 1158).

10

to serve the Delaware market, nor that such an intent brought the product into Delaware.

But drawing every reasonable inference in favor of the Plaintiffs, it is arguable from its own submissions that Allmed had an intent to serve the United States market in general. The district court has consistently held, at least for purposes of the long-arm statute, that "[a] non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware."[26] The Court infers from the allegations in the complaints that the kit arrived in Delaware because of Allmed's intent to serve Delaware.

If the facts from Allmed's submissions are accepted, they suggest a prima facie statutory basis for the exercise of personal jurisdiction under the dual jurisdiction theory. The Court will consider separately the question of whether the exercise of dual jurisdiction comports with Due Process.

### 3.    *Specific Jurisdiction is Not Available*

It would be frivolous to argue for specific jurisdiction based on the facts alleged in the complaint.

---

[26] *DNA Genotek Inc. v. Spectrum DNA*, 159 F. Supp. 3d 477, 481 (D. Del. 2016) (alteration in original) (quoting *Power Integrations, Inc. v. BCD Semiconductor*, 547 F. Supp. 2d 365, 373 (D. Del. 2008)). *But see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (plurality opinion). The district court's holdings stand at odds with the plurality opinion in *J. McIntyre* and cannot fairly be read to provide a sufficient constitutional basis for the exercise of stream-of-commerce jurisdiction. *See J. McIntyre*, 564 U.S. at 886.

11

No transaction by Allmed is alleged to have occurred in Delaware. Under (c)(1), a defendant can be subject to personal jurisdiction when the suit arises from the defendant's transacting business or performing "any character of work or service in the State." While the Plaintiffs have alleged that Allmed does business in Delaware, it has not alleged any nexus between Allmed's "doing business" and a transaction by Allmed that occurred within Delaware. The Plaintiffs have not alleged that any of the acts by Allmed in selling, distributing, or manufacturing the kits occurred in Delaware. Similarly, no contract was entered into in Delaware. Under (c)(2), a defendant can be subject to jurisdiction when the suit arises from the defendant's contracting "to supply services or things in this State." There is no allegation here that any contract was entered into in this State.

Finally, no act or omission is alleged to have occurred in this State. Under (c)(3), a defendant can be subject to jurisdiction when the suit arises from the defendant's causing "tortious injury in the State by an act or omission in this State." No such act or omission is alleged here. To the extent acts or omissions constituting negligence are alleged at all, the Plaintiffs have not alleged where those acts or omissions occurred.

### B. *The Constitutionality of Exercising Jurisdiction*

Having found two possible statutory bases for jurisdiction–general and dual jurisdiction–the Court must further determine whether the exercise of jurisdiction under those bases would accord with the Due Process Clause of the Fourteenth Amendment. There are no facts to support the constitutional exercise of general

jurisdiction, nor have the Plaintiffs conclusively established a constitutional basis for dual jurisdiction.

A state court may only exercise personal jurisdiction over a nonresident defendant when there are "'minimum contacts' between the defendant and the forum State."[27] The emphasis on minimum contacts "protects the defendant against the burdens of litigating in a distant or inconvenient forum" and "acts to ensure that the States . . . do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system."[28]

For a court to sustain an exercise of jurisdiction, the defendant must have minimum contacts "with the forum State . . . such that maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice"'"[29] Among the factors to be inquired after in determining if it is "reasonable . . . to require the corporation to defend the particular suit which is brought there"[30] are

> the burden on the defendant . . . [;] the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering

---

[27] *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980) (quoting *Int'l Shoe Co.,* 326 U.S. 310 at 316).

[28] *Id.* at 292.

[29] *Id.* (quoting *Int'l Shoe Co.,* 326 U.S. at 316).

[30] *Id.* (quoting *Int'l Shoe Co.,* 326 U.S. at 317).

fundamental substantive social policies.[31]

To the extent that foreseeability is involved in analysis of personal jurisdiction, it is not "the mere likelihood that a product will find its way into the forum State."[32] Instead, "it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[33] Thus, a corporation is subject to personal jurisdiction in a State where it "purposefully avails itself of the privilege of conducting activities within the forum State."[34]

Purposeful availment can be found in the products liability context where a manufacturer or distributor intends to serve the forum State:

> Hence if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has been the source of injury to its owner or to others.[35]

Stated differently, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its

---

[31] *Id.* (citations omitted) (first citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957); then citing *Kulko v. Superior Court*, 436 U.S. 84, 92 (1978); then citing *Shaffer v. Heitner*, 433 U.S. 186, 211 n.37 (1977); and then citing *Kulko*, 436 U.S. at 93).

[32] *Id.* at 297.

[33] *Id.* (citing *Kulko*, 436 U.S. at 97–98; *Shaffer*, 433 U.S. at 216; *id.* at 217–19 (Stevens, J., concurring in judgment)).

[34] *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[35] *Id.*

products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."[36]

Here, the exercise of general jurisdiction would not comport with due process, and it is unclear whether stream-of-commerce jurisdiction would be supportable.

*1. The Exercise of General Jurisdiction Would Be Unconstitutional Here*

The exercise of general jurisdiction over a foreign corporation solely on the basis of "doing business," without more, is constitutionally insufficient to the point of being frivolous.[37] A corporation is amenable to general jurisdiction in a place where "the corporation is fairly regarded as at home."[38] Paradigmatically, this includes "the place of incorporation and principal place of business."[39] This is both a matter of due process and international comity.[40]

Here, there has been no argument, nor is there any factual basis for finding, that Allmed has its principal place of business in Delaware. And the Plaintiffs' complaints expressly state that Allmed is a foreign corporation of China. Without some claim that Allmed is essentially at home in Delaware, the threadbare allegation that it is "doing business" here provides no constitutional basis to exercise general

---

[36] *Id.* at 297–98 (citing *Gray v. Am. Radiator & Standard Sanitary Corp.*, 176 N.E.2d 761 (Ill. 1961)).

[37] *See Genuine Parts Co.*, 137 A.3d at 129–30 ("Until recently . . . . merely doing business in a state was a basis for general jurisdiction there. But as we will later discuss . . . that is no longer enough.").

[38] *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear*, 564 U.S. at 924).

[39] *Id.* (quoting Brilmayer, *supra* note 14, at 735)).

[40] *Id.* at 762–63.

jurisdiction over Allmed.

> ### 2. *The Exercise of Stream-of-Commerce Jurisdiction May Be Constitutional Here*

It is not clear whether there is a constitutional basis for stream-of-commerce jurisdiction under these facts.

Instructive for their factual similarity to this case, if not for the clarity of the general rule set out by the Court, are the United States Supreme Court's plurality and concurring opinions in *J. McIntyre Machinery, Ltd. v. Nicastro*.[41] In *J. McIntyre*, the Court determined that a state court could not exercise personal jurisdiction over a foreign defendant where the only contacts between the defendant and the forum were (1) an independent company's agreement to sell the defendant's products in the United States, (2) attendance by some of the defendant's employees, alongside employees for the distributor, at annual conventions in various states outside the forum, and (3) the sale of no more than four machines that ended up within the forum.[42] The justices were divided in their rationales for arriving at that conclusion.[43]

Justice Kennedy's plurality opinion posited that "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."[44] Personal jurisdiction is not a matter of fairness or foreseeability, the plurality noted,

---

[41] 564 U.S. 873.

[42] *Id.* at 877–78 (Kennedy, J.) (plurality opinion).

[43] *Compare id.* at 883–85 (Kennedy, J.) (plurality opinion) *with id.* at 887–90 (Breyer, J., concurring).

[44] *Id.* at 883 (Kennedy, J.) (plurality opinion).

but of purposeful availment.[45] The plurality found two principles to be implicit in its argument. "First, personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis."[46] That analysis must focus on "whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct."[47] Secondly, the plurality continued, "[b]ecause the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the courts of the United States but not of any particular State."[48] The plurality believed the facts emphasized by the plaintiff "may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market."[49]

Justice Breyer's concurring opinion took a different tack.[50] Justice Breyer believed the outcome of the case was determined by precedent and did not require resort to a "rule of broad applicability."[51] Justice Breyer based his reasoning on his interpretation of the Court's opinions in *Asahi*, where the Court "strongly suggested that a single sale of a product in a State does not constitute an adequate basis for

---

[45] *Id.*

[46] *Id.* at 884.

[47] *Id.*

[48] *Id.*

[49] *Id.* at 886.

[50] *Id.* at 887 (Breyer, J., concurring).

[51] *Id.*

17

asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place."[52]   Justice Breyer pointed out the three lenses through which the *Asahi* opinions looked at stream of commerce, requiring either (1) "'something more' than simply placing 'a product into the stream of commerce,' even if the defendant is 'awar[e]' that the stream 'may or will sweep the product into the forum state,'"[53] (2) a sale that occurs as part of "'the regular and anticipated flow' of commerce into the State," and not as "only an 'edd[y],'"[54] or (3) a "regular course of dealing" as shown by "'the volume, the value, and the hazardous character' of a good."[55] Justice Breyer argued that viewed through any of those lenses, the defendant in *J. McIntyre* did not have a sufficient connection to the forum.[56]

Turning to the present case, there is no clear constitutional basis for stream-of-commerce jurisdiction.  In order to establish such a constitutional basis, the Plaintiffs must ultimately establish facts that would enable them to meet at least one of the tests from *J. McIntyre*.

---

[52] *Id.* at 888–89 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 111, 112 (1987)).

[53] *Id.* at 889 (alteration in original) (quoting *Asahi*, 480 U.S. at 111–12 (O'Connor, J.) (plurality opinion)).

[54] *Id.* (quoting *Asahi*, 480 U.S. at 117 (Brennan, J., concurring in part and concurring in judgment)).

[55] *Id.* (quoting *Asahi*, 480 U.S. at 122 (Stevens., J., concurring in part and concurring in judgment)).

[56] *Id.*

Using the test from the plurality opinion, there has not yet been a plausible allegation of purposeful availment, or any Delaware-directed conduct by Allmed. The Plaintiffs' allegations did not mention any sales in Delaware, any marketing directed at Delaware, or any other basis for specific jurisdiction. And even taking Allmed's submissions into account, there was at most an intent to serve the broader U.S. market, which is insufficient under the plurality's test.

The Plaintiffs' complaints fare no better under the tests remarked upon by Justice Breyer. There is no allegation of "something more" than a single sale of the product (and, indeed, there is no clear allegation that any product was ever sold within Delaware to begin with). Neither is there so much as a bare allegation that there was a "regular and anticipated" flow of Allmed products into Delaware, or a "regular course of dealing" in the products, directed at Delaware. That Allmed is alleged to do business in Delaware, without more, does not establish the constitutionally required minimum contacts that the Plaintiffs have the burden of establishing. Whether they can marshal additional facts in support of their theory will determine the ultimate outcome of this dispute over jurisdiction.

### III. Jurisdictional Discovery is Necessary Here

The Plaintiffs could have more clearly articulated their theory of jurisdiction and provided more detailed allegations in support of that theory. Having failed to do so, however, will not bar them from jurisdictional discovery because Allmed's submissions have at least created a plausible argument that could support dual jurisdiction. The Plaintiffs are entitled to discovery to help in mounting proof for that

19

argument.

Faced with a challenge to personal jurisdiction, plaintiffs are entitled to discovery if their assertion of jurisdiction is minimally plausible:

> While plaintiffs "may not ordinarily be precluded from reasonable discovery in aid of" their attempt to prove that a defendant is subject to the jurisdiction of the Court, plaintiffs are not entitled to jurisdictional discovery where their assertion of personal jurisdiction "lacks[s] th[e] minimal level of plausibility needed to permit discovery to go forward."[57]

Given the opportunity to respond to Allmed's motions, the Plaintiffs asked for discovery but did not make a serious attempt to lay out a plausible basis for personal jurisdiction. Instead, they sought to rest upon the allegations of the complaint, pronouncing them a sufficient basis for general, specific, or dual jurisdiction. That pronouncement is not enough to entitle them to jurisdictional discovery as to all three bases.

Instead, the Plaintiffs will be permitted limited jurisdictional discovery only as to the existence of dual jurisdiction. The parties are reminded that they may not go on a "fishing expedition" in search of a jurisdictional hook.[58]

## CONCLUSION

Allmed's motions to dismiss the complaints against it for lack of personal jurisdiction are **DENIED WITHOUT PREJUDICE**. The Plaintiffs' request for

---

[57] *In re Asbestos Litig.*, No. 77C-ASB-2, 2016 WL 7404547, at *2 (Del. Super. Oct. 17, 2016) (Boyer, Special Master) (citing *Hart*, 593 A.2d at 539).

[58] *See Reid v. Siniscalchi*, No. 2874-VCN, 2011 WL 378795, at *7 (Del. Ch. Jan. 31, 2011).

*Christina Hedger, et al. v. Medline Industries, Inc., et al.*
Civil Action No. K14C-05-012 WLW
January 27, 2017

limited discovery as to the dual-jurisdiction theory of personal jurisdiction is **GRANTED**. Discovery will be limited to no more than ten interrogatories, ten document requests, and twenty requests for admission, unless the parties otherwise agree. Plaintiffs will bear the costs of any document translation. The parties are to agree to a limited discovery scheduling order within thirty days of the issuance of this order. If the parties are unable to agree on a scheduling order, the matter will be resolved by the Court. The scheduling order will provide dates for the close of jurisdictional discovery and for briefing on renewed motions to dismiss.

IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh