May 2, 2018

Michael A. Balmuth et al.           :

             v.                    :           No. 2017-6-Appeal.
                                                         (NC 10-296)

David E. Dolce, in his capacity as Tax Assessor  :
    for the Town of Portsmouth.

John Qua et al.           :

             v.                    :           No. 2017-8-Appeal.
                                                         (NC 10-298)
                                                         No. 2017-9 Appeal.
                                                         (NC 11-127)

David E. Dolce, in his capacity as Tax Assessor  :
    for the Town of Portsmouth.

William Antle           :

             v.                    :           No. 2017-11-Appeal.
                                                         (NC 10-299)
                                                         No. 2017-12-Appeal.
                                                         (NC 11-131)

David E. Dolce, in his capacity as Tax Assessor  :
    for the Town of Portsmouth.

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Michael A. Balmuth et al.                    :

                    v.                         :          No. 2017-6-Appeal.
                                                          (NC 10-296)
David E. Dolce, in his capacity as Tax Assessor :
        for the Town of Portsmouth.

            John Qua et al.                    :

                    v.                         :          No. 2017-8-Appeal.
                                                          (NC 10-298)
                                                          No. 2017-9 Appeal.
                                                          (NC 11-127)

David E. Dolce, in his capacity as Tax Assessor :
        for the Town of Portsmouth.

            William Antle                      :

                    v.                         :          No. 2017-11-Appeal.
                                                          (NC 10-299)
                                                          No. 2017-12-Appeal.
                                                          (NC 11-131)

David E. Dolce, in his capacity as Tax Assessor :
        for the Town of Portsmouth.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.**

- 1 -

*"Don't tax you,*
*Don't tax me,*
*Tax that fellow behind the tree*."[1]

The defendant, who is the tax assessor for the Town of Portsmouth,[2] appeals from a judgment of the Superior Court in favor of the plaintiffs, a group of Portsmouth taxpayers who had challenged the defendant's tax assessments on their properties for tax years 2009 and 2010. These cases come to us in the wake of what is considered generally to be the worst economic downturn since the Great Depression. It is common knowledge that in 2008 the stock market plummeted, and with it the value of real estate throughout the country tumbled as well. It also is well known that Rhode Island was not immune from the effects of that economic collapse. Indeed, as both the plaintiffs and the defendant agree, the value of the plaintiffs' properties decreased in 2008 and 2009. This appeal, though, is not a contest about the value of the plaintiffs' properties. Rather, this appeal is about whether certain sections of G.L. 1956 chapter 5 of title 44 require the plaintiffs to base their tax appeals on the fair market value of their properties "as of December 31 in the year of the last update or revaluation * * *."

When the plaintiffs appealed their assessments for tax years 2009 and 2010, the defendant maintained that they were locked in to the value of their properties as of December 31, 2007, the year of Portsmouth's last revaluation. The plaintiffs, whose properties had experienced a substantial decline in value after December 31, 2007, disagree. After a nonjury trial based on an agreed statement of facts, the trial justice concluded that, based on the language set forth in the pertinent sections of chapter 5 of title 44, the plaintiffs were not "locked in" to the values of

---

[1] Attributed to Senator Russell B. Long. *See* William B. Mead, *Congress Tackles the Income Tax*, MONEY, July 1973, at 55 ("'Most people have the same philosophy about taxes,' says Senator Russell B. Long * * *: *Don't tax you, Don't tax me, Tax that fellow behind the tree*.").
[2] During the pendency of these consolidated appeals, Matthew Helfand replaced David E. Dolce as the tax assessor for the Town of Portsmouth.

their properties as of December 31, 2007.[3]  Put another way, the trial justice decided that the plaintiffs were authorized under the law to challenge the defendant's assessments for tax years 2009 and 2010 by employing the fair market values of their properties as of December 31, 2008 and December 31, 2009, respectively.  We agree.  Accordingly, for the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The facts here are undisputed and straightforward.  The plaintiffs all own property in the Town of Portsmouth.  More specifically, each of the plaintiffs owns a condominium in the same development.  In 2007, consistent with his statutory duties as the tax assessor for Portsmouth, defendant conducted a full-scale revaluation of all real estate in the town, including plaintiffs' properties.[4]  The defendant determined that, as of December 31, 2007, the full and fair cash values[5] of plaintiffs' properties were as follows: the Balmuth Property, $4,430,200; the Qua Property, $5,320,800; and the Antle Property, $4,076,500.

Then, in 2008, the economy cratered.  There is no question that real estate values were adversely affected by the downturn.  Nevertheless, as he was permitted to do, for his assessment for tax year 2009, defendant carried forward the December 31, 2007 valuations of plaintiffs'

---

[3] The parties agreed that the assessor's valuations for December 31, 2007, were correct and that the values claimed by plaintiffs for December 31, 2008, and December 31, 2009, were also correct.  We appreciate the level of cooperation exhibited by the parties in reaching agreement on several factual issues, especially in that it has allowed us to focus on the issue before the Court.

[4] Pursuant to G.L. 1956 § 44-5-11.6(a)(2)(i), defendant was required to conduct a revaluation in 2007.  Section 44-5-11.6(a)(2)(ii) requires local tax assessors to "conduct a revaluation within nine (9) years of the date of the prior revaluation and * * * conduct an update of real property every three (3) years from the last revaluation."

[5] As used in chapter 5 of title 44, the terms "full and fair cash value" and "fair market value" are synonymous.  *See Harvard Pilgrim Health Care of New England, Inc. v. Gelati*, 865 A.2d 1028, 1035 (R.I. 2004) ("We have defined 'full and fair cash value' as fair market value." (quoting *Nos Limited Partnership v. Booth*, 654 A.2d 308, 310 (R.I. 1995))).  Accordingly, throughout this opinion, we use them interchangeably.

properties. For tax year 2010, he did the same. Thus, for tax years 2009 and 2010, defendant assessed plaintiffs' property taxes based on the fair market values of those properties as of December 31, 2007.

However, as of December 31, 2008—the date of assessment for tax year 2009—and December 31, 2009—the date of assessment for tax year 2010—the fair market values of plaintiffs' properties had decreased. As of December 31, 2008, the parties stipulate that the fair market values of plaintiffs' properties were as follows: the Balmuth Property, $4,107,333; the Qua Property, $4,788,720; and the Antle Property, $3,668,850. As of December 31, 2009, the fair market values of plaintiffs' properties were as follows: the Qua Property, $4,256,640; and the Antle Property, $3,261,200.[6]

The plaintiffs sought review of those assessments on the ground that they had been overtaxed for tax years 2009 and 2010.[7] Following the procedure set forth in § 44-5-26(a), plaintiffs first appealed to defendant. He denied their appeals, informing plaintiffs that, under chapter 5 of title 44, he had properly carried forward the December 31, 2007 valuations for use in determining his assessments for tax years 2009 and 2010. The plaintiffs then appealed to the Portsmouth Tax Assessment Board of Review, where they were again denied relief. Still unsatisfied, plaintiffs then petitioned for relief in the Superior Court.

Over the course of several years, plaintiffs' tax appeal cases were consolidated as they wound their way through the normal course of litigation. Ultimately, after the parties submitted an agreed statement of facts, a justice of the Superior Court granted plaintiffs the relief for which

---

[6] Because the Balmuths did not submit an annual account specifying the fair market value of their property as of December 31, 2009, with respect to tax year 2010, only the taxes assessed on the Qua Property and the Antle Property are before this Court.

[7] Notwithstanding the Balmuths' lack of an annual account for tax year 2010, plaintiffs complied with all the procedural and timing requirements necessary to perfect a tax appeal under chapter 5 of title 44. For example, plaintiffs timely paid the taxes due on their properties for tax years 2009 and 2010.

they had petitioned. The trial justice found that plaintiffs could challenge defendant's tax assessments for tax years 2009 and 2010 using the fair market values of their properties as of December 31, 2008 and December 31, 2009, respectively. He concluded that, contrary to defendant's interpretation of the language set forth in §§ 44-5-15 and 44-5-26 (language we will discuss *infra*), plaintiffs were not confined to the December 31, 2007 valuations. The trial justice reasoned that, under § 44-5-30, plaintiffs had satisfied the preconditions necessary to prevail on their tax appeals. Citing § 44-5-30, he wrote:

> "For judgment to enter in favor of the taxpayer challenging [a] property tax assessment, the taxpayer must demonstrate: (1) that an account has been given; (2) that the tax has been assessed in excess of the property's full and fair cash value; and (3) that the taxes on the property have been paid prior to judgment entering."

Section 44-5-30 provides, in pertinent part, that:

> "If the taxpayer has given in an account, and if on the trial of the petition, either with or without a jury, it appears that the taxpayer's real estate * * * has been assessed * * * at a value in excess of its full and fair cash value, * * * the court shall give judgment that the sum by which the taxpayer has been so overtaxed, * * * with his or her costs, be deducted from his or her tax * * *."

Seizing on the use of "shall" in that statute, the trial justice determined that he was bound to enter judgment in plaintiffs' favor because they had satisfied their burden under § 44-5-30. He explained that defendant had even conceded as much, in that there was no dispute that plaintiffs had (1) given an account; (2) been assessed taxes in excess of their properties' full and fair cash value for tax years 2009 and 2010; and (3) timely paid their taxes for tax years 2009 and 2010. Accordingly, a judgment entered in plaintiffs' favor.

The defendant timely appealed, posing to this Court a single question of statutory interpretation: whether, pursuant to chapter 5 of title 44, plaintiffs were locked in to the fair

market valuations of their properties as of December 31, 2007, when they appealed defendant's assessments for tax years 2009 and 2010.

## II

## Standard of Review

This Court reviews questions of statutory interpretation *de novo*. *Whittemore v. Thompson*, 139 A.3d 530, 540 (R.I. 2016). When we are confronted with a statute that is clear and unambiguous, we "must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting *Cummings v. Shorey*, 761 A.2d 680, 684 (R.I. 2000)). If, however, we are presented with an ambiguous statute—one that contains "a word or phrase * * * susceptible of more than one reasonable meaning[,]" *Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island*, 31 A.3d 1263, 1269 (R.I. 2011)—then "this Court will 'employ our well-established maxims of statutory construction in an effort to glean the intent of the Legislature.'" *In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 505 (R.I. 2011) (quoting *Town of Burrillville v. Pascoag Apartment Associates, LLC*, 950 A.2d 435, 445 (R.I. 2008)).

## III

## Discussion

Our state's statutory scheme for local taxation begins with § 44-5-1, which vests in cities and towns the power to tax. Under § 44-5-1, "[t]he tax is apportioned upon the assessed valuations as determined by the assessors of the city or town as of December 31 in each year at 12:00 A.M. midnight, the date being known as the date of assessment of city or town valuations." Pursuant to § 44-5-13, "[t]he assessors shall assess all valuation and apportion any tax levy on the inhabitants of the city or town and the ratable property in the city or town

according to law, and the assessed valuation of the ratable property is made as of the date of assessment provided in § 44-5-1[.]"[8]  "All real property subject to taxation shall be assessed at its full and fair cash value, or at a uniform percentage of its value, not to exceed one hundred percent (100%), to be determined by the assessors in each town or city * * *."  Section 44-5-12(a).  With respect to real estate in particular, "[t]he assessors shall make a list containing the true, full, and fair cash value * * * as defined in []§ 44-5-12 * * * of the ratable estate in the city or town, placing the real estate [and other assets] in separate columns * * *."  Section 44-5-20.

Before assessing any valuations, though, the tax assessors of all the cities and towns must comply with the notice provisions set forth in § 44-5-15.[9]  Section 44-5-15 also requires the annual filing of an account by a taxpayer:

> "The notices require every person and body corporate liable to taxation to bring in to the assessors at the time they may prescribe a true and exact account of all the ratable estate owned or possessed by that person or body, describing and specifying the value of every parcel of the real estate *as of December 31 in the year of the last update or revaluation* and personal estate as of December 31 of the tax year * * *."  (Emphasis added.)

---

[8] Certain personal property, however, is

> "estimated at the average of the personalty kept on hand or located in the taxing district during the twelve (12) months ending with the date of assessment, or the average of any portion of the twelve (12) months when the business has not been carried on or located in the taxing district for a year."  Section 44-5-13.

[9] More broadly, § 44-5-15 states, in pertinent part, that:

> "Before assessing any valuations, the assessors of all the cities and towns shall cause printed notices of the time and place of their respective meetings to be posted in four (4) public places in their respective city or town, for three (3) weeks next preceding the time of their meeting, and shall advertise in a newspaper with a statewide circulation jointly, at least once a week for the same space of time."

The account required under § 44-5-15 is a pillar of our local taxation structure; it must be made under oath, and it serves as a condition precedent to appealing a tax assessment. Section 44-5-16(a); *Whittemore*, 139 A.3d at 547. Furthermore, as prescribed by § 44-5-17, "[i]f any person brings in an account as provided in § 44-5-15, the assessors shall nevertheless assess the person's ratable estate at what they deem its full and fair cash value * * *."

Generally, a taxpayer seeking to appeal a tax assessment with which he or she is dissatisfied has an exclusive statutory remedy to do so. As § 44-5-27 instructs, that remedy is provided in § 44-5-26.[10] Under § 44-5-26(a), "[a]ny person aggrieved on any ground whatsoever by any assessment of taxes against him or her in any city or town * * * may within ninety (90) days from the date the first tax payment is due, file an appeal in the local office of tax assessment * * *." From the local office of tax assessment, the aggrieved taxpayer may appeal to the local tax board of review and then, if still dissatisfied, file a petition for review in the Superior Court. Sections 44-5-26(a) and (b). In addition to setting forth the procedural and timing requirements required to perfect a tax appeal, § 44-5-26 further directs that "[a]ppeals to the local office of tax assessment are to be on an application[,]" and that "[t]he application shall be in" a particular form. Section 44-5-26(b); *see* Appendix. Contained in that form are two provisions that are of significance to defendant's position in this appeal. *See* § 44-5-26(b).

---

[10] In full, § 44-5-27 provides that:

> "The remedy provided in § 44-5-26 is exclusive if the taxpayer owned or possessed any ratable estate at all, except that, in a proper case, the taxpayer may invoke the equity jurisdiction of the superior court; provided, that the complaint is filed within three (3) months after the last day appointed for the payment, without penalty, of the tax, or the first installment of the tax, if it is payable in installments. A taxpayer alleging an illegal or void tax assessment against him or her is confined to the remedies provided by § 44-5-26, except that the taxpayer is not required to file an appeal with the local assessor."

First, included in the form under the heading "REASON(S) REDUCTION SOUGHT" is a space in which an aggrieved taxpayer can list his or her property's "Fair Market Value (*as of December 31 in the year of the last update or revaluation for real estate* and as of December 31 of the tax year for personal estate * * *)[.]"  (Emphasis added.)  Next, below the form's signature block and under the heading "TAXPAYER INFORMATION ABOUT APPEAL PROCEDURE[,]" the form informs the taxpayer, in pertinent part, that:

> "You may appeal your assessment if your property is: (1) OVERVALUED (*assessed value is more than the fair market value as of December 31 in the year of the last update or revaluation for real estate* and as of December 31 of the tax year for personal estate for any reason, including clerical and data processing errors * * *)."  (Emphasis added.)

Finally, rounding out the maze of local taxation statutes is § 44-5-30, entitled "Judgment on petition where taxpayer has filed account."  Section 44-5-30 provides, in pertinent part, that:

> "If the taxpayer has given in an account, and if on the trial of the petition, either with or without a jury, it appears that the taxpayer's real estate * * * has been assessed * * * at a value in excess of its full and fair cash value, * * * the court shall give judgment that the sum by which the taxpayer has been so overtaxed, * * * with his or her costs, be deducted from his or her tax * * *."

Turning to the merits of this appeal, defendant and plaintiffs offer differing interpretations of the above-quoted sections contained within chapter 5 of title 44.  Stressing the language of those statutes and of the form required by § 44-5-26(b), defendant argues that, when plaintiffs appealed his assessments for tax years 2009 and 2010, they were restricted to the valuations of their properties as of December 31, 2007, the date of Portsmouth's last revaluation. In support of that interpretation, defendant focuses on two statutory provisions, both of which refer to the fair market value of property "as of December 31 in the year of the last update or revaluation."  Specifically, defendant directs us to § 44-5-15, which requires the annual filing of

an account stating the value of "real estate as of December 31 in the year of the last update or revaluation[,]" and the form required by § 44-5-26(b), which refers twice to the fair market value of real estate "as of December 31 in the year of the last update or revaluation[.]" According to defendant, those provisions, when read together with the other sections of chapter 5 of title 44, mandate that plaintiffs must base their tax appeals on the valuations of their properties as of December 31, 2007.

The plaintiffs disagree. To support their position that the law permits a challenge to defendant's tax assessments using annual valuations, they first point to this Court's opinion in *Wickes Asset Management, Inc. v. Dupuis*, 679 A.2d 314 (R.I. 1996). It is true that, in *Wickes*, we held that "a property owner disputing an assessment carried over from a prior year is not precluded from challenging the assessment and is therefore not necessarily 'locked into' that value until the next decennial revaluation * * *." *Wickes*, 679 A.2d at 320. Indeed, the guiding principle of *Wickes* was that, under the statutory scheme in place at that time, "the Legislature ha[d] provided interim remedies for a person aggrieved by an annual tax assessment." *Id.* As the Court noted, those interim remedies were set forth in §§ 44-5-26 and 44-5-27. *Id.*

However, it is significant that, at the time *Wickes* was decided, revaluations of real property were conducted every ten years. *See Wickes*, 679 A.2d at 320. As defendant correctly points out, that has since changed. In 1997, a year after *Wickes*, the General Assembly overhauled the revaluation process, enacting P.L. 1997, ch. 179, § 1 (later codified as §§ 44-5-11.5, 44-5-11.6, and 44-5-11.7). Under the new revaluation statute, rather than requiring cities and towns to conduct revaluations every ten years, the General Assembly mandated that "each city and town shall conduct a revaluation within nine (9) years of the date of the prior revaluation

and shall conduct an update of real property every three (3) years from the last revaluation." P.L. 1997, ch. 179, § 1; *see* § 44-5-11.6(a)(2)(i)-(ii).

The transition to a more frequent revaluation-and-update schedule was based on a detailed list of legislative findings. Among other things, the General Assembly recognized that the old ten-year revaluation led to inequitable results for taxpayers. As the General Assembly explained,

> "The state's ten year property revaluation cycle is the longest revaluation cycle in the country. Infrequent revaluations translate into disparities in property tax burden between types and classes of property within and among cities and towns. In addition, because each city and town represents multiple systems and procedures for administering the property tax, there is an inconsistent administration of property tax law and regulations." P.L. 1997, ch. 179, § 1; *see* § 44-5-11.5(2).

In the view of the General Assembly, the shift to a more frequent revaluation-and-update schedule struck a balance between "ensur[ing] that all taxpayers in Rhode Island are treated equitably" and minimizing the administrative burden placed on cities and towns tasked with conducting more frequent valuations. P.L. 1997, ch. 179, § 1; *see* § 44-5-11.5(3). According to the General Assembly, "[e]nsuring that taxpayers are treated fairly begins with modernizing the administration of the property tax that ensures:

> "(a) Up-to-date property values are maintained through more frequent property revaluations;
> "(b) Cities and towns meet defined standards related to performing updates of property values;
> "(c) The state shares in the cost of performing updates of property values in the cities and towns;
> "(d) A meaningful and effective method of ensuring that cities and towns comply with the nine year revaluation cycle and the updates of property values are developed;
> "(e) Procedures for administering the property tax are standardized — such as general reporting and classification systems;
> "(f) Assessors and contracted property revaluation companies meet appropriate qualifications and standards; and

"(g) Intergovernmental cooperation in the administration of the property tax is maximized." P.L. 1997, ch. 179, § 1; *see* § 44-5-11.5(3).[11]

Since that overhaul in 1997, the nine-year revaluation schedule and the three-year update schedule have largely remained the same.

Another change in the law further impacts reliance on our holding in *Wickes*. In 2001, the General Assembly amended both § 44-5-15 and the language in the form required by § 44-5-26(b). *See* P.L. 2001, ch. 365, § 1. Those amendments added the phrase "as of December 31 in the year of the last update or revaluation" for real estate to portions of § 44-5-15 and the form required by § 44-5-26(b).[12] *Id.* In light of the 1997 overhaul and the 2001 amendments, plaintiffs' reliance on *Wickes* as binding authority in this case is considerably weakened. On this point, we agree with defendant that perhaps the trial justice should not have relied on *Wickes* to the extent he did. However, that does not resolve the question of statutory interpretation at hand. Even with this Court's holding in *Wickes* being of doubtful value here, what remains unclear is whether plaintiffs are, as defendant argues, confined to the values of their properties as of December 31, 2007. Based on our thorough review of the language contained in chapter 5 of title 44, the only thing that appears clear to us now is just how unclear the conflicting statutory language is.

---

[11] The subsections' labels have since changed. As currently constituted, § 44-5-11.5, which contains the list of legislative findings, labels the subsections of § 44-5-11.5(3) with roman numerals in place of alphabetical letters. *See* §§ 44-5-11.5(3)(i)–(vii).

[12] Prior to 2001, the language of § 44-5-15 and the form required by § 44-5-26(b) made no mention of the value of real estate as of December 31 "in the year of the last update or revaluation." *See* P.L. 2001, ch. 365, § 1 (adding to § 44-5-15 the phrase "as of December 31 in the year of the last update or revaluation" after the language "describing and specifying the value of every parcel of the real estate" and adding to a parenthetical of one provision of the form required by § 44-5-26(b) that the taxpayer state the fair market value "as of December 31 in the year of the last update or revaluation for real estate" and adding that same phrase—"in the year of the last update or revaluation for real estate"—to another parenthetical).

For example, § 44-5-1—the statute that empowers cities and towns to tax—provides in succinct and unambiguous language that "[t]he tax is apportioned upon the assessed valuations *as determined by the assessors of the city or town as of December 31 in each year* at 12:00 A.M. midnight, the date being known as the date of assessment of city or town valuations." (Emphasis added.) A plain reading of that language would suggest that plaintiffs' position is correct: they may challenge the valuations of their properties "as of December 31 in each year[,]" freeing them from the bonds of the December 31, 2007 valuations. On the other hand, we are confronted with the language of § 44-5-15 and that in the form required by § 44-5-26(b). In each of those places there is language providing that taxpayers state the value of their *real estate* "as of December 31 in the year of the last update or revaluation * * *."

Also, it does not escape our notice that, in accordance with the 2001 amendments to § 44-5-15 and to the form required by § 44-5-26(b), taxpayers must state the value of their *personal estate* "as of December 31 of the tax year," providing fertile ground for an argument that the General Assembly intended to treat the valuation of real estate and personal estate differently. *See* §§ 44-5-15 and 44-5-26(b); *see also* P.L. 2001, ch. 365, § 1. A plain reading of those amendments lends support to defendant's argument that plaintiffs are able to challenge their tax assessments only by using the fair market value as of December 31, 2007, the date of the last revaluation before their challenges. Unfortunately, the conflict between the language of § 44-5-1 and that of § 44-5-15 and the statutory form required by § 44-5-26(b) is only the most glaring, but not the sole, ambiguity lurking in chapter 5 of title 44.

To cloud matters further, there is also the language of § 44-5-12(a), which states that "[a]ll real property subject to taxation shall be assessed at its full and fair cash value, * * * to be determined by the assessors in each town or city[.]" And, lest we forget, the language of § 44-5-

13—that "[t]he assessors shall assess all valuation and apportion any tax levy on the inhabitants of the city or town and the ratable property in the city or town according to law, and the assessed valuation of the ratable property is made as of the date of assessment provided in § 44-5-1"—and the language of § 44-5-30—which instructs that "the court shall give judgment" in favor of the taxpayer

> "[i]f the taxpayer has given in an account, and if on the trial of the petition [filed pursuant to § 44-5-26], * * * it appears that the taxpayer's real estate * * * has been assessed, if assessment has been made at full and fair cash value, at a value in excess of its full and fair cash value * * *."

Those provisions add further uncertainty to the resolution of the issue at hand; that is, whether the General Assembly intended that plaintiffs be locked in to the December 31, 2007 valuations per chapter 5 of title 44.

Therefore, it is readily apparent that we are faced with ambiguous statutory language. We can reach no other conclusion than that the inartful drafting of the pertinent statutory language here renders it plainly "susceptible of more than one reasonable meaning." *See Drs. Pass and Bertherman, Inc.*, 31 A.3d at 1269. As explained above, because we are confronted with a genuine ambiguity, and not one divined by crafty lawyering,[13] we "will 'employ our well-established maxims of statutory construction in an effort to glean the intent of the Legislature.'" *In re Proposed Town of New Shoreham Project*, 25 A.3d at 505 (quoting *Pascoag Apartment*

---

[13] As this Court previously has observed,

> "Because ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate * * * the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner." *In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 505 n.30 (R.I. 2011) (quoting *Lazarus v. Sherman*, 10 A.3d 456, 464 (R.I. 2011)).

- 14 -

*Associates, LLC*, 950 A.2d at 445). One such rule is of particular relevance here: "'taxing statutes are to be strictly construed' with doubts resolved in favor of the taxpayer." *Maggiacomo v. DiVincenzo*, 122 R.I. 615, 618, 410 A.2d 1332, 1333 (1980) (quoting *Van Alen v. Stein*, 119 R.I. 347, 359, 376 A.2d 1383, 1389 (1977)); *see also Inn Group Associates v. Booth*, 593 A.2d 49, 55 (R.I. 1991) (explaining that "[d]oubts as to the construction of [taxing] laws * * * are to be resolved in favor of the taxpayer" (quoting *Potowomut Golf Club, Inc. v. Norberg*, 114 R.I. 589, 592, 337 A.2d 226, 227 (1975))).

As belabored above, there is no shortage of doubt about whether the General Assembly intended to restrict plaintiffs to the values of their properties as of December 31, 2007, the year of the revaluation at issue. Unfortunately, neither the 2001 amendments to § 44-5-15 and the form required by § 44-5-26(b), adding the phrase "in the year of the last update or revaluation[,]" nor the legislative findings contained in § 44-5-11.5 are determinative in discerning legislative intent. On one hand, as defendant argues, perhaps by virtue of the 2001 amendments, the General Assembly intended to lock in taxpayers like plaintiffs to the December 31, 2007 valuations. But, on the other hand, perhaps, as plaintiffs argue, in enacting those amendments, the General Assembly simply intended for tax assessors such as defendant to be allowed to use those valuations as a carry-forward, easing the administrative burden of conducting yearly valuations while still affording taxpayers with the opportunity to pursue tax appeals on an annual basis using annual valuations. The language of the pertinent statutes does not resolve our linguistic dilemma.

Accordingly, based on the ambiguities created by the conflicting statutory provisions quoted above and the lack of clear legislative intent to the contrary, we hold that plaintiffs had the right to appeal the yearly tax assessments for tax years 2009 and 2010 based on the fair

market valuations of their properties as of December 31, 2008 and December 31, 2009. *See Inn Group Associates*, 593 A.2d at 55; *Maggiacomo*, 122 R.I. at 618, 410 A.2d at 1333. In other words, when plaintiffs appealed defendant's assessments for tax years 2009 and 2010, they were not locked in to the December 31, 2007 valuations of their properties.

In so holding, we are cognizant of defendant's reliance on alternative canons of statutory construction to support his position. He argues first that the specific provisions of § 44-5-15 and the form required by § 44-5-26(b) should control over the general provisions of §§ 44-5-1 and 44-5-12. *See, e.g.*, *Whitehouse v. Moran*, 808 A.2d 626, 629-30 (R.I. 2002) (explaining that "the general rule of statutory construction clearly provides that when a statute of general application conflicts with a statute that specifically deals with a special subject matter, and when the two statutes cannot be construed harmoniously together, the special statute prevails over the statute of general application"). In the alternative, defendant maintains that, because the language in § 44-5-15 and § 44-5-26(b)'s form was added after the language in § 44-5-1 and § 44-5-12, the later provisions should govern here. *See, e.g.*, *State v. Souza*, 456 A.2d 775, 781 (R.I. 1983) (stating that "[o]nly when two statutory provisions are irreconcilably repugnant will a repeal be implied and the last enacted statute preferred"). As a general matter, we do not disagree that those canons of statutory construction may prove useful in resolving statutory ambiguities. But, here, because we are confronted with a tax statute so plainly afflicted with significant ambiguity, we are firm in our view that we are best guided by the maxim which directs that "'taxing statutes are to be strictly construed' with doubts resolved in favor of the taxpayer." *Maggiacomo*, 122 R.I. at 618, 410 A.2d at 1333 (quoting *Van Alen*, 119 R.I. at 359, 376 A.2d at 1389).[14]

---

[14] As *amicus curiae*, the Rhode Island League of Cities and Towns weighed in on the issue presented by this appeal. It argued in defendant's favor, predicting that an interpretation in plaintiffs' favor would ensure a slippery slope into perilous terrain, where local town and city halls would be inundated with tax appeals. The dissent too cautions of such a descent into fiscal

Moreover, we "presume[] that the General Assembly knows the state of existing relevant law when it enacts or amends a statute." *Power Test Realty Company Limited Partnership v. Coit*, 134 A.3d 1213, 1222 (R.I. 2016) (quoting *Retirement Board of Employees' Retirement System of Rhode Island v. DiPrete*, 845 A.2d 270, 287 (R.I. 2004)).  Further, we have held that the law disfavors repeal by implication. *See In re Request for Advisory Opinion from House of Representatives (Coastal Resources Management Council)*, 961 A.2d 930, 935-36 n.7 (R.I. 2008).  Clearly, when the General Assembly amended § 44-5-15 and the statutory form contained in § 44-5-26(b), it could have repealed or amended any statute that was contradictory or conflicting.  It chose not to do so.

## IV

## Conclusion

Because we hold that the plaintiffs were permitted to appeal the yearly tax assessments for tax years 2009 and 2010 based on the fair market valuations of their properties as of December 31, 2008 and December 31, 2009, we affirm the judgment of the Superior Court.  The papers shall be returned to that court.

---

disarray.  Besides noting that appealing a tax assessment is in and of itself rather cost-prohibitive, we nonetheless conclude that such a policy concern is best addressed by the General Assembly, not this Court.  Here, the concern with a hypothetically possible flood of tax appeals does not overcome our view that the ambiguities lurking in the statutes must be resolved in the taxpayers' favor. *See Inn Group Associates v. Booth*, 593 A.2d 49, 55 (R.I. 1991); *Maggiacomo v. DiVincenzo*, 122 R.I. 615, 618, 410 A.2d 1332, 1333 (1980).  In any event, we pause to thank the Rhode Island League of Cities and Towns for their thoughtful arguments on the interpretation of the pertinent provisions of chapter 5 of title 44.

**Justice Indeglia, with whom Chief Justice Suttell joins, dissenting.** Our review of the relevant tax statutes leads us to conclude that real estate property taxpayers are not entitled to appeal the valuation of their property each year, but may only challenge it "in the year of the last update or revaluation * * *." General Laws 1956 § 44-5-15. Therefore, we respectfully dissent. We do agree with the majority that the conflicting statutory language in §§ 44-5-1, 44-5-12(a), 44-5-13, and 44-5-15, and the form required by § 44-5-26(b), is inarticulately drafted and ambiguous, requiring us to employ our maxims of statutory construction. What we disagree with is the construction tool used by the majority in its attempt to solve this problem.

In 1997, the General Assembly changed the property tax value scheme from the requirement that the revaluation of real property occur every ten years to requiring that it be updated every three years.[1] *See* P.L. 1997, ch. 179, § 1. As outlined in the legislative findings cited by the majority, one of the purposes of the statutory amendments was to prevent a drastic change in taxpayers' property values at the time of revaluation. *See* § 44-5-11.5(3)(i) ("Ensuring that taxpayers are treated fairly begins with modernizing the administration of the property tax that ensures * * * [u]p-to-date property values are maintained through more frequent property revaluations * * *.").

Then in 2001, the General Assembly amended both § 44-5-15 and the language in the form required by § 44-5-26(b).[2] Section 44-5-15 now reads, in pertinent part:

> "The notices require every person * * * liable to taxation to bring in to the assessors at the time they may prescribe a true and exact account of all the ratable estate owned * * * describing and specifying the value of every parcel of the real estate as of December 31 *in the year of the last update or revaluation* and

---

[1] More specifically, municipalities must conduct a full revaluation every nine years and conduct an update every three years. *See* § 44-5-11.5(4); P.L. 1997, ch. 179, § 1.

[2] We acknowledge that the language in § 44-5-15 and the form required by § 44-5-26(b) is slightly different.

personal estate as of December 31 *of the tax year * * *.*"
(Emphasis added.)

The form required by § 44-5-26(b) now reads, in pertinent part:

> "[The taxpayer] may appeal [their] assessment if [their] property
> is: (1) OVERVALUED (assessed value is more than the fair
> market value as of December 31 *in the year of the last update or
> revaluation for real estate* and as of December 31 *of the tax year
> for personal estate * * *) * * *.*" (Emphasis added); *see* P.L. 2001,
> ch. 365, § 1.

The confusion in this legislation was caused by the combining of two distinct functions into one chapter of the general laws. Sections 44-5-1, 44-5-12(a), and 44-5-13 give the local tax assessor the authority to value all property in the community, while §§ 44-5-15, 44-5-26(b), and 44-5-27 give individual property owners the right to challenge those valuations.

The majority acknowledges that there are at least three rules of construction that could be utilized: (1) taxing statutes should be strictly construed in favor of the taxpayer; (2) specific statutes should control over general statutes if they cannot be construed harmoniously together; and (3) legislation enacted later in time should prevail over earlier inconsistent language. While the majority relies solely on the first rule, we respectfully suggest that, in this case, the last two are more appropriate in solving our dilemma and in gleaning the General Assembly's intent. *See Retirement Board of Employees' Retirement System of Rhode Island v. DiPrete*, 845 A.2d 270, 279 (R.I. 2004) ("When [a] statute is susceptible to more than one plausible interpretation, however, this Court will endeavor by every rule of statutory construction to ascertain the intent of the General Assembly."); *State v. Dearmas*, 841 A.2d 659, 666-67 (R.I. 2004) (employing multiple maxims of statutory construction in interpreting a statute).[3]

---

[3] The statutory maxim that taxing statutes should be construed in favor of the taxpayer was first introduced in *Manning v. Board of Tax Commissioners of Rhode Island*, 46 R.I. 400, 127 A. 865 (1925). This Court stated:

With its 2001 amendments to §§ 44-5-15 and 44-5-26(b) adding the following: "[real] estate as of December 31 in the year of the last update or revaluation [and personal estate] as of December 31 of the tax year[,]" the General Assembly made clear when property owners can appeal a real estate valuation, but left intact the timing of personal property appeals and the overall authority of the assessor in valuing all property in the community. *See* P.L. 2001, ch. 365, § 1. This is specific legislation directed at only those choosing to appeal their real estate valuations and, as such, must be considered as controlling the remaining valuation provisions of the statute. Likewise, the fact that the 2001 amendment was adopted later than the overall taxing change of 1997 gives insight to the General Assembly's attempt to clarify when an appeal can be taken. Using these two rules of construction convinces us that the General Assembly limited taxpayer appeals to the year of the last update or revaluation.

We gain comfort in this view when considering the possible ramifications of the majority's interpretation.[4] Some taxpayers could seek a revaluation every year, requiring

---

"Doubts as to the construction of laws of this character are to be resolved in favor of the taxpayer. The legislative intent to impose the burden of a tax is not to be found by implication nor conjecture. Before approving an assessment a court may well require that its authorization be clearly and explicitly expressed in the law." *Manning*, 46 R.I. at 410, 127 A. at 870.

Similar language has been quoted in *Van Alen v. Stein*, 119 R.I. 347, 359, 376 A.2d 1383, 1389 (1977), *Potowomut Golf Club, Inc. v. Norberg*, 114 R.I. 589, 592, 337 A.2d 226, 227 (1975), and *United Transit Company v. Hawksley*, 86 R.I. 53, 61, 133 A.2d 132, 136 (1957). This language seems to suggest that this maxim was meant to be controlling with regard to statutes that *impose* a tax. While it is a fine distinction, we note that the present case deals with the procedure of a tax appeal, rather than the imposition of a tax.

[4] In a case with a similar fact pattern to the one before us, another Superior Court justice addressed this added burden on municipalities and taxpayers, concluding that it would create an "absurd" result. Transcript of Record at 34-44, *Prices Neck LLC v. Booth*, Nos. NC-2010-189, NC-2011-128, NC-2012-120 (R.I. Super. Ct. Feb. 14, 2013). In addition, the justice pointed out that an interpretation in favor of yearly appeals would solely benefit owners of higher-valued homes because the potential savings in their situations would make an appeal worthwhile. *Id.*

municipalities, such as defendant, to expend funds in justifying them.  Interpreting the statute in that manner would unnecessarily burden already strained municipal budgets, ultimately passing the costs on to taxpayers.  Likewise, the loss of revenue, which occurred in this case, would leave cities and towns attempting to recoup their losses by, again, looking to remaining property owners.  In these times when most owners do not have expendable income, we cannot fathom the General Assembly wanting to do that.

For these reasons, we must respectfully voice our dissent.

# Appendix

the waters of the state, floating or nonfloating, which is designed or remodeled as a place of habitation and is not principally used for transportation, and this definition includes platforms and waterborne hotels and restaurants; "local tax assessor", for the purposes of this section, means the assessor for the city or town within whose harbor line the houseboat is physically situated.

**History of Section.**
  P.L. 1981, ch. 370, § 1.

## 44-5-26. Petition in superior court for relief from assessment.

(a) Any person aggrieved on any ground whatsoever by any assessment of taxes against him or her in any city or town, or any tenant or group of tenants, of real estate paying rent therefrom, and under obligation to pay more than one-half of the taxes thereon, may within ninety (90) days from the date the first tax payment is due, file an appeal in the local office of tax assessment; provided, if the person to whom a tax on real estate is assessed chooses to file an appeal, the appeal filed by a tenant or group of tenants will be void. For the purposes of this section, the tenant(s) has the burden of proving financial responsibility to pay more than one-half (½) of the taxes. The assessor has forty-five (45) days to review the appeal, render a decision and notify the taxpayer of the decision. The taxpayer, if still aggrieved, may appeal the decision of the tax assessor to the local tax board of review, or in the event that the assessor does not render a decision, the taxpayer may appeal to the local tax board of review at the expiration of the forty-five (45) day period. Appeals to the local tax board of review are to be filed not more than thirty (30) days after the assessor renders a decision and notifies the taxpayer, or if the assessor does not render a decision within forty-five (45) days of the filing of the appeal, not more than ninety (90) days after the expiration of the forty-five (45) day period. The local tax board of review shall, within ninety (90) days of the filing of the appeal, hear the appeal and render a decision within thirty (30) days of the date that the hearing was held. Provided, that a city or town may request and receive an extension from the director of the Rhode Island department of revenue.

(b) Appeals to the local office of tax assessment are to be on an application. In the event of an appeal to the local tax board of review, the local office of tax assessment, upon request by the taxpayer, shall forward the application to the local tax board of review. The application shall be in the following form:

STATE OF RHODE ISLAND

FISCAL YEAR _____

_____
Name of City or Town

APPLICATION FOR APPEAL OF PROPERTY TAX

For appeals to the tax assessor, this form must be filed with the local office of tax assessment within ninety (90) days from the date the first tax payment is due. For appeals to the local tax board of review, this form must be filed with the local tax board of review not more than thirty (30)

days after the assessor renders a decision, or if the assessor does not render a decision within forty-five (45) days of the filing of the appeal, not more than ninety (90) days after the expiration of the forty-five (45) day period.

1. TAXPAYER INFORMATION:
A. Name(s) of Assessed Owner:_____
B. Name(s) and Status of Applicant (if other than Assessed Owner):_____
_____ Subsequent Owner (Acquired Title After December 31 on _____
20_____ )
_____ Administrator/Executor _____ Lessee _____ Mortgagee _____
Other Specify _____
C. Mailing Address and Telephone No.:_____ ( ) _____
　　　　　　　　　　　　　　　　　　　　Address　　　　　　Tel. No.
D. Previous Assessed Value _____ E. New Assessed Value _____
2. PROPERTY IDENTIFICATION: Complete using information as it appears on tax bill.
A. Tax Bill Account No.: _____ Assessed Valuation _____ Annual Tax _____
B. Location:_____ Description:_____
　　　　No.　　Street　　Zip
Real Estate Parcel Identification:　Map ____ Block ____ Parcel ____ Type____
Tangible Personal
C. Date Property Acquired:　Purchase Price: Total cost of any improvements_____
　　What is the amount of fire insurance on building:
3. REASON(S) REDUCTION SOUGHT: Check reason(s) reduction is warranted and briefly explain why it applies. Continue explanation on attachment if necessary.
　　Overvaluation.　　　　　　　　　　　Incorrect Usage Classification.
　　Disproportionate Assessment.　　　　　Other Specify:
　　Applicant's Opinion of Value $　　　Fair Market Value　Class　Assessed Value
　　　　　　　　　　　　　　　　　　(as of December
　　　　　　　　　　　　　　　　　　31 in the year of
　　　　　　　　　　　　　　　　　　the last update or
　　　　　　　　　　　　　　　　　　revaluation for
　　　　　　　　　　　　　　　　　　real estate and
　　　　　　　　　　　　　　　　　　as of December 31
　　　　　　　　　　　　　　　　　　of the tax year
　　　　　　　　　　　　　　　　　　for personal estate;)
Explanation_____
_____

Have you filed a true and exact account this year with the City Assessor as required by law?
Comparable Properties that support your claim:

| Address | Sale Price | Sales Date | Property Type | Assessed value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

4. SIGNATURES;
SIGNATURE OF APPLICANT　　　　　　　　　　　　　　　　DATE
SIGNATURE OF AUTHORIZED AGENT　　　　　　　　　　　　DATE
　　　　　　　　　　　　　　　　　　　　( )_____
Name of Preparer　　　　　　　　Address　　　　　　Tel. No.

TAXPAYER INFORMATION ABOUT APPEAL PROCEDURE

REASONS FOR AN APPEAL. It is the intent of the general assembly to ensure that all taxpayers in Rhode Island are treated equitably. Ensuring that taxpayers are treated fairly begins where cities and towns meet defined standards related to performing property values. All properties should be assessed in a uniform manner, and properties of equal value should be assessed the same.

TO DISPUTE YOUR VALUATION OR ASSESSMENT OR CORRECT ANY OTHER BILLING PROBLEM OR ERROR THAT CAUSED YOUR TAX BILL TO BE HIGHER THAN IT SHOULD BE, YOU MUST APPEAL WITHIN NINETY (90) DAYS FROM THE DATE THE FIRST TAX PAYMENT IS DUE.

You may appeal your assessment if your property is: (1) OVERVALUED (assessed value is more than the fair market value as of December 31 in the year of the last update or revaluation for real estate and as of December 31 of the tax year for personal estate for any reason, including clerical

and data processing errors; (2) disproportionately assessed in comparison with other properties; (3) classified incorrectly as residential, commercial, industrial or open space, farm or forest; (4) illegal tax partially or fully exempt; (5) modified from its condition from the time of the last update or revaluation.

WHO MAY FILE AN APPLICATION: You may file an application if you are (1) the assessed or subsequent (acquiring title after December 31) owner of the property; (2) the owner's administrator or executor; (3) a tenant or group of tenants of real estate paying rent therefrom, and under obligations to pay more than one-half (½) of the taxes thereon; (4) a person owning or having an interest in or possession of the property; or (5) a mortgagee if the assessed owner has not applied. In some cases, you must pay all or a portion of the tax before you can file.

WHEN AND WHERE APPLICATION MUST BE FILED. Your application must be filed with the local office of tax assessment within NINETY (90) days from the date the first tax payment is due. THESE DEADLINES CANNOT BE EXTENDED OR WAIVED BY THE ASSESSOR FOR ANY REASON. IF YOUR APPLICATION IS NOT FILED ON TIME, YOU LOSE ALL RIGHTS TO AN ABATEMENT AND THE ASSESSOR CANNOT BY LAW GRANT YOU ONE. AN APPLICATION IS FILED WHEN RECEIVED BY THE ASSESSOR'S OFFICE.

PAYMENT OF TAX. Filing an application does not stay the collection of your taxes. In some cases, you must pay the tax when due to appeal the assessors disposition of your application. Failure to pay the tax assessed when due may also subject you to interest charges and collection action. To avoid any loss of rights or additional charges, you should pay the tax as assessed. If an abatement is granted and you have already paid the entire year's tax as abated, you will receive a refund of any overpayment.

FILING AN ACCOUNT. Rhode Island General Laws Section 44-5-15 requires the annual filing of a true and exact account of all ratable estate owned or possessed by every person and corporate body. The time to file is between December 31, and January 31, of intention to submit declaration by March 15. Failure to file a true and full account, within the prescribed time, eliminates the right to appeal to the superior court, subject to the exceptions provided in Rhode Island General Laws Section 44-5-26(b). No amended returns will be accepted after March 15th. Such notice of your intention must be sent by certified mail, postage prepaid, postmark no later than 12 o'clock midnight of the last day, January 31. No extensions beyond March 15th can be granted. The form for filing such account may be obtained from the city or town assessor.

ASSESSOR'S DISPOSITION. Upon applying for a reduction in assessment, you may be asked to provide the assessor with further written information about the property and to permit them to inspect it. Failure to provide the information or permit an inspection within thirty (30) days of the request may result in the loss of your appeal rights.

APPEAL. The assessor shall have forty-five (45) days to review the appeal, render a decision and notify the taxpayer of the decision. The taxpayer, if still aggrieved, may appeal the decision of the tax assessor to the local tax board of review, or in the event that the assessor does not render a decision, the taxpayer may appeal to the local tax board of review at the expiration of the forty-five (45) day period. Appeals to the local tax board of review shall be filed not more than thirty (30) days after the assessor renders a decision and notifies the taxpayer, or if the assessor does not render a decision within forty-five (45) days of the filing of the appeal, not more than ninety (90) days after the expiration of the forty-five (45) day period.

---

### DISPOSITION OF APPLICATION (ASSESSOR'S USE ONLY)

GRANTED

Date Sent_____

Date Returned_____　　DENIED

On-Site Inspection　　　　DEEMED DENIED
Date
By_____

　　　　　　　　　　Date Voted/Deemed Denied
Date Change　　　　　Certificate No.

Assessed Value_____
Abated Value_____
Adjusted Value_____
Assessed Tax_____
Abated Tax_____
Adjusted Tax_____

Tax Board of Review

Any person still aggrieved on any ground whatsoever by an assessment of taxes against him or her in any city or town may, within thirty (30) days of the tax board of review decision notice, file a petition in the superior court for the county in which the city or town lies for relief from the assessment, to which petition the assessors of taxes of the city or town in office at the time the petition is filed shall be made parties respondent, and the clerk shall thereupon issue a citation substantially in the following form:

| | |
|---|---|
| **Title of Case** | Michael A. Balmuth et al. v. David E. Dolce, in his capacity as Tax Assessor for the Town of Portsmouth.<br><br>John Qua et al. v. David E. Dolce, in his capacity as Tax Assessor for the Town of Portsmouth.<br><br>William Antle v. David E. Dolce, in his capacity as Tax Assessor for the Town of Portsmouth. |
| **Case Number** | No. 2017-6-Appeal.<br>(NC 10-296)<br><br>No. 2017-8-Appeal.<br>(NC 10-298)<br>No. 2017-9-Appeal.<br>(NC 11-127)<br><br>No. 2017-11-Appeal.<br>(NC 10-299)<br>No. 2017-12-Appeal.<br>(NC 11-131) |
| **Date Opinion Filed** | May 2, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Walter R. Stone |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Michael J. Richards, Esq.<br>Brian G. Bardorf, Esq.<br>Mark B. Bardorf, Esq.<br>For Defendant:<br><br>Kevin P. Gavin, Esq. |

SU-CMS-02A (revised June 2016)