November 10, 2021

**Supreme Court**

Athena Providence Place et al.   :

        v.            :

Elyse M. Pare, in her capacity as  :
  Tax Assessor for the City of
    Providence, et al.

No. 2019-247-Appeal.
(PC 15-5520)

Athena Providence Place et al.   :

        v.            :

Elyse M. Pare, in her capacity as  :
  Tax Assessor for the City of
    Providence, et al.

No. 2019-248-Appeal.
(PC 16-729)

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Athena Providence Place et al.      :

                    v.               :        No. 2019-247-Appeal.
                                              (PC 15-5520)
Elyse M. Pare, in her capacity as Tax   :
  Assessor for the City of Providence,
              et al.


Athena Providence Place et al.      :

                    v.               :        No. 2019-248-Appeal.
                                              (PC 16-729)
Elyse M. Pare, in her capacity as Tax   :
  Assessor for the City of Providence,
              et al.


Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

### O P I N I O N

**Justice Lynch Prata, for the Court.**  In these consolidated appeals, the respondent, Elyse M. Pare, in her capacity as the tax assessor for the City of Providence (the city), appeals from two judgments of the Superior Court entered in favor of the petitioners, a group of ninety-four taxpayers who challenged the city's

- 1 -

tax assessments on their properties for tax years 2014 and 2015.[1]  For the reasons stated herein, we reverse the judgments of the Superior Court and remand the cases to the Superior Court for entry of judgments consistent with this opinion.

**Facts and Travel**

These appeals involve the assessed valuations of certain condominium units located in the city in the development known as The 903 (the property or The 903). The 903 consists of 330 dwelling units, as well as parking and storage-space condominium units.  Prior to the 2014 tax year, the property was subject to an amended tax stabilization agreement (the TSA).  The TSA provided for agreed assessed values for the property and stabilized tax payments for tax years 2004 through 2013.

In 2012 the city performed a statutorily mandated citywide assessment update of property values (the 2012 valuation).[2]  The 2012 valuation included updating the assessed value for the property, even though the TSA provided for stabilized tax payments for the property through tax year 2013.  The city notified petitioners of the

---

[1] Given the fact that the list of names of the individual petitioners is lengthy and is already a part of the record in this case, we will not recite it here.  Also, in addition to the city, the other named respondents in the petition for relief from assessment are the members of the Providence Board of Tax Assessment Review, in their official capacities.

[2] The 2012 valuation was performed pursuant to G.L. 1956 § 44-5-11.5(4), requiring municipalities to conduct an update of real property every three years from the date of the last revaluation.

2012 valuation process and informed them that taxpayers wishing to challenge the revaluation assessments could request an informal hearing. The petitioners availed themselves of this opportunity, contending that the 2012 valuation assessments were too high. After this hearing, the city notified petitioners that it was affirming the 2012 valuation assessments without change. Despite the newly established values for the property set by the 2012 valuation, the city taxed the property for tax year 2013 based on the stabilized amount set forth in the TSA.

Upon expiration of the TSA on December 31, 2013, the city revalued and reassessed each unit of The 903 (the 2013 revaluation). The 2013 revaluation was not based on physical changes in the condition of the property. The 2013 revaluation assessed The 903 units at approximately 30 percent higher than the 2012 valuation. The city issued property tax bills to petitioners in June 2014 and June 2015 based upon the assessed property values set forth in the 2013 revaluation. No new notices of reassessment were sent, and the 2014 and 2015 tax bills were the only notice that petitioners received of the 2013 revaluation.

The petitioners filed two petitions in the Superior Court, on December 18, 2015, and February 18, 2016, seeking relief from the increased assessed values set forth in the 2013 revaluation for tax years 2014 and 2015, respectively.[3] The matters

---

[3] It is undisputed that petitioners complied with relevant statutes for filing of an account and payment of taxes pending an appeal, and exhausted all administrative remedies for tax years 2014 and 2015.

were consolidated in the Superior Court. The parties agreed to submit the matter to the trial justice for a decision on the merits based upon stipulated facts, written submissions, and documentary evidence, including affidavits and deposition testimony.

The trial justice issued a written decision on April 25, 2019, finding that the 2013 revaluation was selective, arbitrary, and discriminatory. Accordingly, the trial justice ruled that the 2013 revaluation was illegal and invalid, and he ordered that the tax bills for tax years 2014 and 2015 "shall be revised based on the 2012 Revaluation." Judgments were entered in favor of petitioners in excess of $1.5 million, including prejudgment interest and statutory postjudgment interest pursuant to G.L. 1956 § 9-21-10.

The city timely appealed the judgments to this Court and moved in the Superior Court for a stay pending appeal. The trial justice granted the city's motion, and enforcement was stayed pending appeal.

**Standard of Review**

This Court accords "great deference to the findings of fact of a trial justice sitting without a jury, and will disturb such findings only when the justice misconceives or overlooks material evidence or otherwise is clearly wrong." *Whittemore v. Thompson*, 139 A.3d 530, 540 (R.I. 2016) (quoting *Granoff Realty II, Limited Partnership v. Rossi*, 823 A.2d 296, 298 (R.I. 2003)). "A judgment in a

- 4 -

nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law[.]" *E.W. Burman, Inc. v. Bradford Dyeing Association, Inc.*, 220 A.3d 745, 753 (R.I. 2019) (quoting *Cote v. Aiello*, 148 A.3d 537, 544 (R.I. 2016)). However, "[t]his Court reviews questions of statutory interpretation *de novo*." *Balmuth v. Dolce for Town of Portsmouth*, 182 A.3d 576, 580 (R.I. 2018). If a statute is clear and unambiguous, "we 'must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" *Id.* (quoting *Whittemore*, 139 A.3d at 540).

## Discussion

On appeal, the city contends that the trial justice improperly weighed the evidence and erred as a matter of law in finding that the 2013 revaluation was illegal, invalid, selective, arbitrary, and discriminatory.

General Laws 1956 § 44-5-1 "vests in cities and towns the power to tax" ratable property. *Balmuth*, 182 A.3d at 580. The tax is apportioned based on the assessed valuations of the ratable property on December 31 of each year, as

- 5 -

determined by the city or town tax assessor. Section 44-5-1.[4]  In order "to provide more reliable and up-to-date property values in each of the cities and towns[,]" § 44-5-11.5(1), the General Assembly has mandated that municipalities conduct a revaluation every nine years, and an update every three years.[5] Section 44-5-11.5(4). However, "[a]ny property that is either exempt from the local property tax * * * or pays a city or town an amount in lieu of taxes is not required to have its values updated[.]" Section 44-5-11.6(e).

This Court has recognized that "[b]ecause revaluations must be carried out in an acceptable and orderly manner, selective assessments are generally held unlawful as discriminatory against the complaining taxpayer." *Capital Properties, Inc. v. State*, 749 A.2d 1069, 1084 (R.I. 1999) (quoting *Picerne v. DiPrete*, 428 A.2d 1074, 1077 (R.I. 1981)).  Selective assessments occur when the municipality singles out

---

[4] Although § 44-5-1 provides that property taxes shall be based upon the assessed valuations determined "as of December 31 in each year[,]" this Court has recognized that other sections contained within chapter 5 of title 44 of the general laws refer to the assessed values of property "as of December 31 in the year of the last update or revaluation[.]" *Balmuth v. Dolce for Town of Portsmouth*, 182 A.3d 576, 578 (R.I. 2018).  When previously faced with this ambiguous statutory language, we concluded that there was a "lack of clear legislative intent" and ultimately held that taxpayers are not "locked in" to the fair market value of their properties as of the last update or revaluation, but rather could challenge assessed values using the fair market values of the properties annually as of December 31. *Id.* at 578, 586.

[5] A full revaluation involves a physical inspection of each property in the municipality. Daniel A. Curran, *Property Tax Assessment in the New Era*, 55 R.I. Bar J. 13, 14 (2007).  A statistical update is a mathematical evaluation, which involves "the analyses of sales in the various municipal neighborhoods." *Id.*

"one taxpayer or a small group of taxpayers for revaluation or for first-time assessment when similar property is not assessed for any tax liability." *Picerne*, 428 A.2d at 1077.

Here, the 2012 valuation was a citywide reassessment update which determined "100% of fair market value" of properties as of December 31, 2012. While the city updated the property's values during the 2012 valuation, as of December 31, 2012, the property was subject to the TSA and petitioners made "[s]tabilized [t]ax [p]ayments * * * to the [c]ity in lieu of all other real property and personal property taxes[.]" *See* G.L. 1956 § 44-3-9(a)(1) (exempting from taxation property subject to "a stabilized amount of taxes to be paid on account of the property, notwithstanding the valuation of the property or the rate of tax"). Accordingly, The 903 was not a property subject to taxation at its fair market value as of December 31, 2012.

However, upon expiration of the TSA on December 31, 2013, the property became subject to taxation based on the fair market assessed value. *See* §§ 44-5-1; 44-5-12(a). Because the TSA expired in the middle of the revaluation cycle, the city performed the 2013 revaluation, which assessed the fair market value of the property as of December 31, 2013. *See* § 44-5-1 (setting the date of assessment "as of December 31 in each year"). The city based the 2014 and 2015 tax bills on the assessed value from the 2013 revaluation.

The 2013 revaluation can be deemed to be selective only if the property was subjected to revaluation and similar properties were not. *See Picerne*, 428 A.2d at 1077 (stating that cases alleging selective assessments "are characterized by the singling out * * * of taxpayers for revaluation * * * when similar property is not assessed"). The trial justice "found no evidence in the record submitted that any other properties were revalued as of December 31, 2013." This finding misconceives and overlooks material evidence. The only evidence in the record as to whether other properties were revalued upon the expiration of a tax stabilization agreement is the testimony of staff members of the city tax assessor's office. The city's deputy tax assessor testified that "every year the assessor will point out what properties * * * need to be looked at. The tax stabilization was an agreement that was * * * brought to the office's attention that was expiring, so * * * the office needed to review properties."

Specifically, the deputy assessor at the time of the 2013 revaluation testified that, if a property changes "from a stabilized property to a non-stabilized property, there's a change in classification" that would prompt a revaluation. She pointed out that any other property whose "tax stabilizations might have expired that year" would have been subject to revaluation as of December 31, 2013. Although she could not specifically recall what other properties were revalued, she believed there "were a couple."

- 8 -

Likewise, the tax assessor for the city at the time of the 2013 revaluation testified that the office would normally revalue and reassess properties upon the expiration of a tax stabilization agreement in the middle of a revaluation cycle. Although the tax assessor at the time could not himself positively identify other properties where this happened, he testified at his deposition held on April 11, 2017, that the office was "doing one now[,]" and "[t]here were several."

We discern nothing in the record offered by petitioners to rebut the testimony of the tax assessor's office. Indeed, petitioners bear the burden to prove, by a preponderance of the evidence, that the 2013 revaluation was selective.[6] *See Willow Street Associates LLP v. Board of Tax Assessment Review*, 798 A.2d 896, 899-900 (R.I. 2002) ("Tax assessors are entitled to a presumption that they have performed their official acts properly until the contrary is proven.") (brackets omitted) (quoting *Ferland Corp. v. Bouchard*, 626 A.2d 210, 215 (R.I. 1993)); *Narragansett Electric Company v. Carbone*, 898 A.2d 87, 99 (R.I. 2006) (articulating the plaintiff's burden of proof of a preponderance of the evidence for "most civil cases"). The petitioners failed to present any evidence that similar properties in the city were not subjected to revaluation, and there is no evidence in the record that the property was singled

---

[6] In fact, petitioners neither alleged in their petitions nor argued in their filings before the Superior Court that the 2013 revaluation was selective.

out for revaluation.[7] *See Picerne*, 428 A.2d at 1075, 1078 (finding a reassessment selective and discriminatory where a city's mayor directed the collection of additional tax revenue through updated assessments, only apartment buildings containing six or more units were reassessed, and the new assessment formula "produced just enough income to meet the city's projected revenue needs"). Therefore, we conclude that the record before us establishes that the city's normal practice is to revalue and reassess properties upon expiration of a tax stabilization agreement.

In addition, we hold that the trial justice's conclusion that the 2013 revaluation was discriminatory is clearly erroneous. In his decision, the trial justice found that "[t]he 2013 Revaluation was discriminatory because all the procedural and substantive benefits of a revaluation afforded to all the [c]ity's taxpayers were not afforded the [p]etitioners in the 2013 Revaluation." Certainly, taxpayers are afforded certain notice requirements under our state's scheme for local taxation. However, our review of the record reveals that the city met the statutory notice requirements for the 2013 revaluation.

---

[7] The trial justice's decision indicates that the court was provided "with a copy of the [c]ity's certified tax rolls[.]" Unfortunately, the record before this Court includes only a summary of the property assessments and total taxes for the city; specific parcel-level data is only reflected for The 903. Thus, the record does not include the city's certified tax rolls as referenced by the trial justice. Accordingly, we cannot discern whether the city increased the assessed values of any other properties from tax year 2013 to tax year 2014.

First, § 44-5-15 requires the municipality to post prior notice of the assessment in public places and advertise the assessment in a newspaper of statewide circulation. *See, e.g.*, *Balmuth*, 182 A.3d at 581 ("Before assessing any valuations * * * the tax assessors of all the cities and towns must comply with the notice provisions set forth in § 44-5-15."). Second, the municipality must notify the taxpayer of the amount to be taxed, pursuant to G.L. 1956 § 44-7-7. Here, the record reflects that the city complied in publishing a notice of assessment for tax years 2014 and 2015; petitioners did not dispute the sufficiency of these notices. In addition, the city sent petitioners bills for tax years 2014 and 2015 informing them of the tax amounts. The petitioners admitted that the city sent tax bills to the taxpayer-owners of The 903 for tax years 2014 and 2015. Thus, because the city complied with the statutory notice provisions, we conclude that the trial justice clearly erred when he found that petitioners were denied "all the procedural and substantive benefits of a revaluation[.]"

The petitioners enjoyed the benefit of the TSA and made stabilized tax payments to the city for ten years. Upon the expiration of the TSA, the city was entitled, and indeed required, to tax the property at its full and fair cash value, provided that the city complied with the requisite statutory notice requirements for assessment and the 2013 revaluation was not selective. There is not a scintilla of evidence in the record before this Court to suggest that the city singled out the

- 11 -

property for revaluation. The petitioners presented no evidence that other properties whose tax stabilization agreements expired in mid-cycle were not revalued upon expiration of the agreements. It was the petitioners' burden to prove that the 2013 revaluation was selective, and the trial justice overlooked and misconceived material evidence, and was otherwise clearly wrong, when he found that they met this burden.

## Conclusion

For the foregoing reasons, we reverse the judgments of the Superior Court. The records in this case are remanded to the Superior Court with instructions to enter judgments in favor of the city on the petitions for relief from assessment.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Athena Providence Place et al. v. Elyse M. Pare, in her capacity as Tax Assessor for the City of Providence, et al.<br><br>Athena Providence Place et al. v. Elyse M. Pare, in her capacity as Tax Assessor for the City of Providence, et al. |
| **Case Number** | No. 2019-247-Appeal.<br>(PC 15-5520)<br><br>No. 2019-248-Appeal.<br>(PC 16-729) |
| **Date Opinion Filed** | November 10, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Petitioners:<br><br>Michael T. Eskey, Esq. |
| | For Respondents:<br><br>Jillian H. Barker, Esq.<br>Lisa Fries, Esq.<br>Nicholas P. Poulos, Esq. |

SU-CMS-02A (revised June 2020)